Chant Yedalian, State Bar No. 222325
(chant@chant.mobi)
CHANT & COMPANY
A Professional Law Corporation
1010 N. Central Ave.
Glendale, CA 91202
Phone: 877.574.7100
Fax: 877.574.9411

Counsel for Plaintiff

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LARRY TRAN, on behalf of himself and all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> CATALINA CHANNEL EXPRESS, INC. (d/b/a Catalina Express); and DOES 1 through 10, inclusive, <br><br> Defendants. | Case No.: 2:15-cv-03289-AB-MRW <br><br> **NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT** <br><br> [Filed concurrently with Declaration of Paul Sawasaki, Declaration of Larry Tran, Declaration of Chant Yedalian, and [Proposed] Order, lodged herewith] <br><br> **HEARING** <br> Date:  January 25, 2016 <br> Time:  10:00 a.m. <br> Courtroom:  4 (2nd Floor) <br> Judge: Hon. Andre Birotte Jr. |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD HEREIN:

PLEASE TAKE NOTICE THAT on January 25, 2016 at 10:00 a.m. or as soon thereafter as the matter may be heard before the Honorable Andre Birotte Jr. in Courtroom 4 (2nd Floor), located at 312 North Spring Street, Los Angeles, California 90012, Plaintiff, Larry Tran, on behalf of himself and on behalf of the proposed Class, will and hereby does move the Court, pursuant to Federal Rules of Civil Procedure Rule 23, for an Order granting preliminary approval of the proposed class action settlement on the terms and conditions set forth in the Class Action Settlement Agreement and Release (hereinafter sometimes referred to as the "Settlement Agreement"), a copy of which is attached to the Declaration of Chant Yedalian as Exhibit 1.[1]

Plaintiff further moves the Court for an Order:

1.  Certifying the Class for settlement purposes;

2.  Appointing Plaintiff Larry Tran as the Class Representative for the Settlement Class;

3.  Appointing attorney Chant Yedalian of Chant & Company A Professional Law Corporation as Class Counsel for the Class;

4.  Appointing Dahl Administration as the Claims Administrator to administer the Settlement;

5.  Approving the proposed notice to the Class, including the Short-Form Notice, Full Notice, and Claim Form attached to the Settlement Agreement as Exhibits A, B, and C, respectively;

6.  Directing notice to be made to the Class as described in the Agreement;

7.  Preliminarily approving the Settlement subject to final review by the Court;

---

[1] Capitalized terms shall have the same meanings as in the Settlement Agreement, unless indicated otherwise.

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 2:15-cv-03289-AB-MRW

8.      Establishing deadlines for Class Members to submit a request for exclusion from the Settlement and to submit objections to the Settlement; and

9.      Setting a final approval and fairness hearing on or about 110 days after the date that the Court grants preliminary approval of the Settlement.

This Motion is based upon this Notice of Motion and Motion, the Declarations, Exhibits and other documents filed concurrently in support thereof, the papers and pleadings on file in this action, and upon such other and further evidence as the Court may adduce at the time of the hearing.

DATED:  December 18, 2015    CHANT & COMPANY
                                A Professional Law Corporation

                                By: __/S/ – Chant Yedalian____
                                    Chant Yedalian
                            Counsel For Plaintiff

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 2:15-cv-03289-AB-MRW

# **TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION…………………………..……………………………1

II.     FACTUAL SUMMARY………………………………………………...1

III.    SETTLEMENT DISCUSSIONS …………………….…...…….…..……………3

IV.     THE SETTLEMENT………………………………………………5

V.      THE CLASS………………………………………………………10

    A.      Numerosity………………………………………………...11

    B.      Commonality………………………………………………12

    C.      Typicality……………………………………………………13

    D.      Adequate Representation……………………………………14

    E.      Rule 23(b)(3) Requirements Are Met…………………………15

        1.      Predominance of Common Questions…………….………16

        2.      Superiority…………………………………………………17

VI.     THE TWO-STEP APPROVAL PROCESS…………………………..20

VII.    THE PRESUMPTION OF FAIRNESS……………………………...21

VIII.   THIS SETTLEMENT IS FAIR AND REASONABLE…………………22

    A.      Risks of Continuing Litigation………………………………23

        1.      "Willfulness"……….…………………………………23

        2.      Class Certification...…………………………………24

        3.      Choice of Law, Notice of Claim and Time Bar Provisions……25

    B.      Substantial Benefits of Settlement Compared to Risks of Continued Litigation…………………………………………………..…25

    C.      Agreement Provides That Change Of Law Before Final Approval of Settlement Will Not Compromise Class Members' Benefits…..…27

    D.      The Settlement Is The Product of Extensive Arm's-Length Negotiations……………………………………...29

IX.     PROPOSED NOTICE TO THE CLASS SHOULD BE APPROVED……...29

X.      REASONABLE ATTORNEY'S FEES AND COSTS WILL BE SOUGHT IN CONNECTION WITH FINAL APPROVAL OF THE SETTLEMENT………………………………………...……………31

# TABLE OF CONTENTS

**Page**

XI.    A REASONABLE INCENTIVE AWARD WILL BE SOUGHT FOR THE  NAMED PLAINTIFF IN CONNECTION WITH FINAL APPROVAL OF THE SETTLEMENT…………………………………………..32

XII.    CONCLUSION…...…………………………………………………………33

# TABLE OF AUTHORITIES

**Federal Cases**                                                                          **Page(s)**

*Abels v. JBC Legal Group, P.C.*
  227 F.R.D. 541 (N.D. Cal. 2005)……………………………………………15

*Amchem Products Inc. v. Woodward*
  521 U.S. 591 (1997)……………………………………………………………19

*Armstrong v. Board of School Directors of the City of Milwaukee*
  616 F.2d 305 (7th Cir. 1980)……………………………………………20, 21

*Bateman v. American Multi-Cinema, Inc.*
  623 F.3d 708 (9th Cir. 2010)……………………...............16, 18, 20, 24, 27, 28

*Battle v. Liberty National Life Ins. Co.*
  770 F.Supp. 1499 (N. D. Ala. 1991)……………………………...................30

*Blackie v. Barrack*
  524 F.2d 891 (9th Cir. 1975)………………………………………………12

*Cal. Rural Legal Assistance, Inc. v. Legal Sevs. Corp.*
  917 F.2d 1171 (9th Cir. 1990)…………………………………………………13

*Chalk v. T-Mobile USA, Inc.*
  560 F.3d 1087 (9th Cir. 2009)…………………………………………………17

*Class Plaintiffs v. City of Seattle*
  955 F.2d 1268 (9th Cir. 1992)………………………………….........20

*Craft v. County of San Bernardino*
  624 F.Supp.2d 1113 (C.D. Cal. 2008)……………...............27, 31-32

*Deposit Guar. Nat'l Bank v. Roper*
  445 U.S. 326 (1980)……………………………………….....................18

*Edwards v. First Am. Corp.*
  610 F.3d 514, 517 (9th Cir. 2010)……………………………………………28

*Eisen v. Carlisle & Jacquelin*
  417 U.S. 156 (1974)……………...………………………….........10-11, 18

*Elkins v. Equitable Life Ins. of Iowa*
  1998 WL 133747 (M.D. Fla. 1998)……………………………………………19

*Evon v. Law Offices of Sidney Mickell*
  688 F.3d 1015 (9th Cir. 2012)…………………………………………27

*First Am. Fin. Corp. v. Edwards*
  131 S.Ct. 3022 (June 20, 2011)……………………………….......28

*First Am. Fin. Corp. v. Edwards*
  132 S.Ct. 2536, 2537 (June 28, 2012)……………………………………28

//

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 2:15-cv-03289-AB-MRW

**Page(s)**

*Hammon v. Barry*
  752 F.Supp 1087 (D. D.C. 1990)…………………….......................21

*Hanlon v. Chrysler Corp.*
  140 F.3d 1011 (9ᵗʰ Cir. 1998)……………………….....…….12, 13, 16, 17

*Hanon v. Dataproducts Corp.*
  976 F.2d 497 (9ᵗʰ Cir. 1992)…………………………………………..13-14

*Ingram v. The Coca-Cola Co.*
  200 F.R.D. 685 (N.D. Ga. 2001)…………………………………...........33

*In re Activision Securities Litigation*
  621 F.Supp. 415 (N.D. Cal. 1985)…………………........................14

*In re Alcoholic Beverages Litigation*
  95 F.R.D. 321 (D.C. N.Y. 1982)……… ……………………...................11

*In re Cendant Corp., Derivative Action Litigation*
  232 F.Supp.2d 327 (D. N.J. 2002)………………………………………...26

*In re Chicken Anti-Trust Litigation*
  560 F.Supp 957 (N.D. Ga. 1980)…………………………………………21

*In re Computer Memories Sec. Litig.*
  111 F.R.D. 675 (N.D. Cal. 1986)…………………………………………11

*In re Heritage Bond Litigation*
  2005 WL 1594403 (C.D. Cal. 2005)…………………………………………26

*In re Mego Fin. Corp. Sec. Litig.*
  213 F.3d 454 (9ᵗʰ Cir. 2000)…………………………………………………….5

*In re Pacific Enters. Sec. Litig.*
  47 F.3d 373 (9ᵗʰ Cir. 1995)………………..…………………………….20, 22

*In re Portal Software, Inc. Sec. Litig.*
  2007 WL 1991529 (N.D. Cal. 2007)………….…..……………….20-21

*In re Toys "R" Us–Delaware, Inc.—Fair And Accurate Credit Transactions Act (FACTA) Litigation*
  295 F.R.D. 438 (C.D. Cal. 2014)…………………………………………26

*Jimenez v. Allstate Ins. Co.*
  765 F.3d 1161 (9ᵗʰ Cir. 2014)………………………………………….........12

*Jordan v. Los Angeles*
  669 F.2d 1311 (9ᵗʰ Cir. 1982)……………….……...............................11

*Kesler v. Ikea U.S., Inc., et al.*
  2008 WL 413268 (C.D. Cal. 2008)…………........................13, 14

*Lerwill v. Inflight Motion Pictures, Inc.*
  582 F.2d 507 (9ᵗʰ Cir. 1978)…………… ……………………………...15

**Page(s)**

*Local Joint Exec. Bd. of Culinary/Bartender*
*Trust Fund v. Las Vegas Sands, Inc.*
   244 F.3d 1152 (9th Cir. 2001)……………..……………………...............15

*Mars Steel Corp. v. Continental Illinois National Bank and Trust Co.*
   834 F.2d 677 (7th Cir. 1987)…………………………………………………21

*Martin v. Pacific Parking Systems, Inc.,*
   2012 WL 2552694 (C.D. Cal. July 2, 2012),
   Rule 23(f) petition for permission for discretionary
   leave to appeal the District Court's denial of certification
   granted by 9th Cir. Docket No. 12-80144,
   *affirmed* 2014 WL 3686135 (July 25, 2014)..………………………………24

*Medrano v. WCG Holdings, Inc.*
   2007 WL 4592113 (C.D. Cal. 2007)…………………………………....13, 14

*Mirfasihi v. Fleet Mortgage Corp.*
   356 F.3d 781 (7th Cir. 2004)…………………………….................30

*Mullane v. Central Hanover Bank & Trust Co.*
   339 U.S. 306 (1950)……………………..…………………………………29

*Murray v. GMAC Mortgage Corp.*
   434 F.3d 948 (7th Cir. 2006)………………………………............17-18

*Murray v. GMAC Mortgage Corp. ("Murray II")*
   2007 WL 1100608 (N.D. Ill. 2007)…………....................................14, 19-20

*Nat'l Rural Telecomm. Coop. v. DirecTV*
   221 F.R.D. 523 (C.D. Cal. 2004)…..………………………….............22

*Officers for Justice v. Civil Service Commission of*
*City and County of San Francisco*
   688 F.2d 615 (9th Cir. 1982)…..……………………..…....22, 23, 26

*Phillips Petroleum Co. v. Shutts*
   472 U.S. 797 (1985)………………………………………….…………..18

*Priddy v. Edelman*
   883 F.2d 438 (6th Cir. 1989)……………………....................................21

*Robins v. Spokeo, Inc.*
   742 F.3d 409 (9th Cir. 2014)…………………………………………29

*Rodriguez v. West Publ'g Corp.*
   563 F.3d 948 (9th Cir. 2009)……………………………………………32

*Silber v. Mabon*
   18 F.3d 1449 (9th Cir. 1994)………………..............................................29

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 2:15-cv-03289-AB-MRW

**Page(s)**

*Sommers v. Abraham Lincoln Federal Savings & Loan Assoc.*
79 F.R.D. 571 (E.D. Pa. 1978)……………………………….......................21-22

*Spokeo, Inc. v. Robins*
135 S.Ct. 1892 (*certiorari* granted April 27, 2015)…………………………29

*Staton v. Boeing Co.*
327 F.3d 938 (9th Cir. 2003)……………………………..…………10, 22, 23

*Steinberg v. Carey*
470 F.Supp. 471 (S.D. N.Y. 1979)…………………………………….......21

*Strube v. American Equity Life Ins. Co.*
226 F.R.D. 688 (M.D. Fla. 2005)………..……………………………………19

*Tchoboian v. Parking Concepts, Inc.*
2009 WL 2169883 (C.D. Cal. 2009)……………………………12-13, 14

*Torrisi v. Tucson Elec. Power Co.*
8 F.3d 1370 (9th Cir. 1993)…………………………………………………22

*Valentino v. Carter-Wallace*
97 F.3d 1227 (9th Cir. 1996)………………………………………………17

*Van Vranken v. Atl. Richfield Co.*
901 F.Supp. 294 (N.D. Cal. 1995)………………………………...............33

*Yokoyama v. Midland Nat'l*
594 F.3d 1087 (9th Cir. 2010)……………………………………….......17

*Zinser v. Accufix Research Institute, Inc.*
253 F.3d 1188 (9th Cir. 2001)……………………………........................16

**Federal Statutes**

15 U.S.C. § 1681 *et seq.*, Fair Credit Reporting Act ("FCRA")…………..2, 18, 19

15 U.S.C. § 1681(c)(g), Fair and Accurate
Credit Transactions Act ("FACTA")……………………………………..…*passim*

15 U.S.C. § 1681n..………………………………………………2, 14, 18, 23

**Federal Rules of Civil Procedure ("FRCP")**

FRCP Rule 23…………………………………..…………………….……11, 18

FRCP Rule 23(a)……………………………………………...….…………11

FRCP Rule 23(a)(1)………………………………………...…………..…11

FRCP Rule 23(a)(2)…………………………….…...……………...………12

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 2:15-cv-03289-AB-MRW

**Page(s)**

FRCP Rule 23(a)(3)…………………………………….…..…..……...…….…...13

FRCP Rule 23(a)(4)………………………………………….……….….………..14

FRCP Rule 23(b)(3)…………….................................................11, 15, 17, 18, 29

FRCP Rule 23(b)(3)(A), (B) (C) and (D)……………………….…………...18, 19

FRCP Rule 23(c)(2)(B) …..………………………….…………….……………..29

FRCP Rule 23(e)…………………………………….........……........5, 20, 21, 22, 23

FRCP Rule 23(e)(1)………………………….…………………….....………...29

FRCP Rule 23(f)…………………………………………….………………23

**<u>Other Authorities</u>**

*Newberg on Class Actions*, 4th Ed………..……………………………21, 22

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 2:15-cv-03289-AB-MRW

## **MEMORANDUM OF POINTS AND AUTHORITIES**

### **I.  INTRODUCTION**

After extensive negotiations, Plaintiff and defendant Catalina Channel Express, Inc. ("Catalina Express") have reached a proposed class-wide settlement of this lawsuit.

Plaintiff, Larry Tran, on behalf of himself and on behalf of the proposed Class, hereby respectfully moves the Court for an Order granting preliminary approval of the proposed class action settlement.

### **II.  FACTUAL SUMMARY**

Plaintiff Larry Tran is a customer of defendant Catalina Express.  Complaint ¶ 25.  Catalina Express is a California corporation that operates a passenger ferry service.  Sawasaki Decl. ¶ 2.  Catalina Express provides scheduled passenger service between three California mainland locations (San Pedro, Long Beach and Dana Point) and two locations on Santa Catalina Island (Avalon and Two Harbors). Sawasaki Decl. ¶ 3.

Catalina Express operates a walk-up ticket counter at each of these five locations.  Sawasaki Decl. ¶ 3.  Each of these ticket counter locations is open to members of the public and offers for sale passenger tickets.  *Ibid.*  Customers who purchase a passenger ticket from any one of these ticket counter locations using a credit card or debit card are provided a printed-paper receipt.  *Id.* at ¶ 5.

On May 26, 2013, Mr. Tran made a purchase for passenger tickets from the Catalina Express walk-up ticket counter location in Long Beach.  Tran Decl. ¶ 3. Mr. Tran paid for his purchase with his credit card.  *Ibid*.  The printed-paper customer receipt which Mr. Tran was provided at the point of sale had the expiration date of his credit card printed on the receipt.  *Ibid*.; Complaint ¶ 35.

Like Mr. Tran, during the Class Period of March 6, 2013 and March 9, 2015, most consumers who used a credit or debit card to purchase a ticket at any of Catalina Express' five walk-up ticket counter locations were provided a printed

- 1 -

paper receipt that displayed their respective credit or debit card's expiration date. Sawasaki Decl. ¶¶ 4, 6.

During the Class Period, there were approximately 275,000 total walk-up credit or debit card transactions at Catalina Express' five ticket counter locations. Sawasaki Decl. ¶ 8.

The Fair and Accurate Credit Transactions Act ("FACTA"), which is a subset of the Fair Credit Reporting Act ("FCRA"), provides that any merchant which accepts credit and/or debit cards is prohibited from printing on electronically printed receipts "more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of sale or transaction." 15 U.S.C. § 1681c(g)(1). A merchant who "willfully" fails to comply with FACTA is liable for (1) actual damages, if any, or statutory damages of not less than $100 and not more than $1,000, (2) punitive damages as may be awarded by the court, and (3) attorney's fees and costs. 15 U.S.C. § 1681n.

On March 6, 2015, Plaintiff filed this class-action case in California Superior Court for the County of Los Angeles (Case No. BC574615). Plaintiff's Complaint alleges, *inter alia*, that Catalina Express willfully violated FACTA by printing the expiration date of credit and debit cards on electronically printed customer receipts printed at a point of sale or transaction. Complaint ¶¶ 37-46.

On March 9, 2015, in response to this litigation, Catalina Express modified its credit and debit card printed-paper receipt format to obscure the card expiration date and adopted a policy of continued future compliance with FACTA's 15 U.S.C. Section 1681c(g)(1). Sawasaki Decl. ¶ 7; Settlement Agreement at III.G.

Catalina Express thereafter removed the case to this Court and filed a motion to dismiss on the grounds that, *inter alia*, there is a choice-of-law clause in Plaintiff's passenger ticket that expressly states that "the general maritime law of the United States" applies, that regardless of the choice-of-law applied, Plaintiff's claims are time-barred by a contractual provision found in the passenger ticket which

requires a notice of claim within 6 months and the filing of suit within 1 year and that such time-bar provisions are valid, fair and were reasonably communicated to Plaintiff, and that, in any event, Plaintiff has not pled (and cannot plead) either a willful or negligent violation of FACTA.  Dkt. No. 10.

## III.   SETTLEMENT DISCUSSIONS

Beginning in late April 2015, Plaintiff and Catalina Express began to explore settlement discussions.  Yedalian Decl. ¶ 3.   The settlement discussions carried over into May 2015 and various proposals (oral and written) continued to be made and considered as part of the discussions between Plaintiff and Catalina Express.   *Ibid*. During these months, underlying facts and information were also exchanged between Plaintiff and Catalina Express.   *Ibid*.   The Parties also explored and considered different potential settlement structures/frameworks.

Unlike other FACTA cases, however, the defendant in this case raised certain facts and issues that do not appear to have been raised in any other FACTA case. For example, defendant pointed to the choice-of-law clause in Plaintiff's passenger ticket to argue that general maritime law applies, that Plaintiff's claims are time-barred by the provision in the passenger ticket which requires a notice of claim within 6 months and the filing of suit within 1 year, and that such time-bar provisions are valid, fair and were reasonably communicated to Plaintiff.  Defendant asserted that these facts and issues provide it with a complete defense. Yedalian Decl. ¶ 4.

Defendant also asserted that Plaintiff has not pled (and cannot plead) either a willful or negligent violation of FACTA based on the facts and allegations made in this particular case.  Defendant asserted that this too provided it with yet another complete and distinct defense.[2]  Yedalian Decl. ¶ 5.

---

[2] Unlike Defendant's other arguments which do not appear to have been raised in any FACTA case, some courts have considered certain specific allegations of willfulness under FACTA but those cases relied upon by defendant involved different factual circumstances and allegations.

Moreover, Defendant did not just make these arguments during the Parties' settlement negotiations and exchanges. Instead, while the Parties were continuing their negotiations in June 2015, Defendant filed a motion to dismiss with the Court wherein it formally briefed its arguments. Dkt. No. 10.

Defendant's formal motion framed these issues for further discussion and debate between the Parties and various exchanges (oral and written) continued to be made. Yedalian Decl. ¶ 7.

In order to effectively assess and address the matters raised by defendant and continue with the Parties' negotiations, Plaintiff's counsel researched the law and investigated the facts. Yedalian Decl. ¶ 8. Although Plaintiff's counsel is well versed with FACTA cases, the unique facts raised by defendant required special attention, legal research and factual investigation. *Ibid.* For example, defendant argued that not only were there choice of law and notice of claim and time bar provisions set forth in the passenger ticket but also that such terms were valid, fair and reasonably communicated. *Ibid.* In response, Plaintiff's counsel researched the legal and factual issues that these matters implicated and also consulted experts concerning the specific facts of this case. *Ibid.* This included consultations with a graphics expert concerning font sizes (as it relates to the Catalina Express passenger ticket and font sizes thereon) as well as an eye specialist (again, as it relates to the Catalina Express passenger ticket and font sizes thereon, as well as issues concerning the capacity of the human eye). *Ibid.*

Ultimately, after the many further exchanges that followed, Plaintiff and Catalina Express reached an agreement in August 2015 concerning the material terms of a proposed class-wide settlement. Yedalian Decl. ¶ 9.

The negotiations and discussions did not, however, end there. Yedalian Decl. ¶ 10. In the months that followed, including until December 16, 2015, the parties continued to negotiate the particulars of their agreement, as well as the actual written terms that should be used to reflect their agreement. *Ibid.* Many drafts and

redlined revisions were exchanged and the Parties met in-person as recently as December 14, 2015 to try to resolve various remaining issues. *Ibid.*

The Class Action Settlement Agreement and Release dated and signed on December 17, 2015 (hereinafter sometimes referred to as the "Settlement Agreement"), a copy of which is attached to the Declaration of Chant Yedalian as Exhibit 1,[3] is a product of all of the extensive negotiations and exchanges between the Parties, following the factual and legal investigation and research concerning the Parties' respective claims and defenses. Yedalian Decl. ¶ 11.

The Settlement Agreement is also based upon the information exchanged by the Parties, including the Declaration of Paul Sawasaki.[4] Yedalian Decl. ¶ 12.

## IV.   THE SETTLEMENT

Subject to the Court's approval pursuant to Federal Rules of Civil Procedure ("FRCP") Rule 23(e), the Parties have agreed to settle this matter upon the terms and conditions set forth in the Settlement Agreement.

A summary of the terms of the Settlement is as follows:

- This Settlement concerns the printed-paper credit and debit card customer receipts that were issued at Catalina Express' five walk-up ticket counter locations (three mainland locations at San Pedro, Long Beach and Dana Point; and two locations on Santa Catalina Island at Avalon and Two Harbors). Sawasaki Decl. ¶ 3; Settlement Agreement at I.

- During the Class Period of March 6, 2013 and March 9, 2015, there were approximately 275,000 total walk-up credit or debit card transactions at Catalina Express' five ticket counter locations and most consumers who used a credit or debit card to purchase a ticket at any of Catalina Express' five walk-up

---

[3] Capitalized terms shall have the same meanings as in the Settlement Agreement, unless indicated otherwise.

[4] "[I]n the context of class action settlements, 'formal discovery is not a necessary ticket to the bargaining table' where the parties have sufficient information to make an informed decision about settlement." *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000).

ticket counter locations were provided a printed paper receipt that displayed their respective credit or debit card's expiration date.  Sawasaki Decl. ¶¶ 4, 6 and 8.

- For the purposes of the Settlement, Plaintiff and Catalina Express have stipulated to the certification of the following Class: All residents of the United States (including Puerto Rico) who, at any time during the period of March 6, 2013 and March 9, 2015, made a credit or debit card purchase at any physical Catalina Express ticket counter location (Avalon, Dana Point, Long Beach, San Pedro, or Two Harbors) and were provided a printed credit or debit card receipt that included a credit or debit card expiration date.  Excluded from the Class are (1) Catalina Express, its related entities, parent companies, subsidiaries and affiliates, and their respective officers, directors, and employees; (2) individuals who only purchased or reserved tickets on Catalina Express's website (http://catalinaexpress.com/); (3) individuals and/or entities who validly and timely opt-out of the Settlement; (4) consumers who previously have released their claims against Catalina Express with respect to the issues raised in this Litigation; and (5) any judge to whom this matter is assigned, and his or her immediate family (spouse, domestic partner, or children). Settlement Agreement I(10).

- Catalina Express will establish a non-reversionary "all-in" cash settlement fund in the total amount of $275,000.00 ("Settlement Fund") that will be used to pay for Claims, Class Counsel's Fees and Expenses, Notice costs, the Service Award, Claims Administrator costs, and any and all other "all-in" costs associated with the Settlement. Settlement Agreement I.(38).

- The Parties are not aware of any customer who has sustained any actual damages as a result of the printing of the expiration date on any of the subject receipts in this case.

- The Settlement allows each Class Member to submit a Claim for each unique credit card or debit card used to make a purchase at a Catalina Express ticket counter location during the Class Period.  If more than one credit or debit card was

- 6 -

used during the Class Period, a separate Claim may be submitted for each.  A Claim Form must be completed and timely returned but a single Claim Form may be used to make more than one Claim.  Settlement Agreement III.B. and III.C.

- Those Class Members who do not claim actual damages may recover up to $250 for each Claim by timely submitting a Claim Form together with required documentation.  Settlement Agreement III.C.

- Those Class Members who claim actual damages may recover up to $500 for each Claim by timely submitting a Claim Form together with required documentation.  Settlement Agreement III.B.

- The required documentation for those Class Members who do not claim actual damages can consist of (1) either an original or copy of a Catalina Express ticket-counter receipt which shows the expiration date of the credit card or debit card; OR (2) an original or copy of a credit card or debit card statement showing that the Class Member made a transaction at a Catalina Express ticket counter location during the Class Period; OR (3) a credit or debit card transaction summary showing that the Class Member made a transaction at a Catalina Express ticket counter location during the Class Period).   In addition to this required documentation, those Class Members who submit a Claim for actual damages must also provide proof of actual damage that they sustained.   Settlement Agreement I.(35).

- Given the nature of this particular consumer class action case, the fact that Catalina Express does not know, nor does Catalina Express have access to any information that would enable it to determine, the postal addresses, email addresses, or facsimile numbers of absent Class Members, and experience with consumer class action claims-made rates, it is expected that a residue will result.  If any residual funds remain after all distributions are made, the unclaimed amounts in the Settlement Fund will not revert to Catalina Express and instead will be distributed to one or more *cy pres* recipients, as mutually agreed to by the Parties and approved by the Court.  If, however, for any reason, any or all of the charities agreed to and

proposed by the Parties are not approved by the Court, any such decision by the Court shall not affect the enforceability of the Settlement because the Parties agree that the residual funds shall be distributed in a manner approved by the Court. Settlement Agreement III.F.  The Parties have agreed to propose Avalon Rotary Club on Catalina and Catalina Kid Ventures to equally share in any and all such residual funds.[5]

- On March 9, 2015, in response to this litigation, Catalina Express modified its credit and debit card printed-paper receipt format to obscure the card expiration date and adopted a policy of continued future compliance with FACTA's 15 U.S.C. Section 1681c(g)(1).  Sawasaki Decl. ¶ 7; Settlement Agreement III.G.

- Catalina Express does not know, nor does Catalina Express have access to any information that would enable it to determine, the postal addresses, email addresses, or facsimile numbers of absent Class Members.  Sawasaki Decl. ¶ 9. Plaintiff and Catalina Express have therefore agreed that notice to the Settlement Class members will be given in the following ways: A copy of the Short-Form Notice will be posted at each of Catalina Express' ticket counters in Avalon, Dana Point, Long Beach, San Pedro, and Two Harbors where tickets are available for purchase, in person for a ninety (90) day period commencing ten (10) calendar days from the date the Court issues a Preliminary Approval Order.  The Short-Form Notice will be displayed in direct view of customers where in-person ticket purchases can be made using a credit card or debit card.  Catalina Express employees will have copies on hand of the Short-Form Notice to provide to customers upon request.  Settlement Agreement IV.A. The Short-Form Notice will

---

[5] There is a nexis between the Class and each of the selected charities.  Each Class Member is, by definition, a customer of Catalina Express.  Due to their location on the island and the services that they provide to the community members on the island, each proposed charity and the community members of the island that they service, if not a Class Member themselves, has or will likely make use of the Catalina Express' ferry services.  These charities then will directly benefit a high concentration of Class Members who reside or work on Catalina Island.  Thus, the residual funds distributed to these charities are more likely to benefit Class Members than funds distributed to other charities that do not directly service the island.

include the Settlement website address and the Claims Administrator's toll-free telephone number which Class Members may use to obtain further information. Settlement Agreement, Exh. A.  The Claims Administrator's will also provide a viewable and printable on-line long-form notice ("Long-Form Notice"), which will be in the form attached to the Settlement Agreement as Exhibit B, via a Settlement website containing a description of the settlement terms.  Settlement Agreement IV.B.

- •        Settlement Class members will have 180 days from the date Short-Form Notice is first posted at Catalina Express' ticket counters in Avalon, Dana Point, Long Beach, San Pedro, and Two Harbors to submit a Claim Form. Settlement Agreement I.(6).

- •        Settlement Class members will have until 60 calendar days after the date Short-Form Notice is first posted by Catalina Express, to exclude themselves from the Settlement.  Settlement Agreement VI.A.

- •        Settlement Class members will have 60 calendar days after the date Short-Form Notice is first posted by Catalina Express, or as the Court otherwise directs, to object to the Settlement.  Any such objection must be filed with the Court and also served on Class Counsel and Defendant's Counsel.  Settlement Agreement VII.A

- •        The Settlement, including the claims process, will be administered, by Dahl Administration, subject to the Court's approval.   Settlement Agreement I.(9).

- •        Class Counsel will apply to the Court for an incentive (service) award of up to $5,000 for the named Plaintiff, to be paid from the Settlement Fund, to compensate Plaintiff for his services as the Class Representative.    Settlement Agreement I.(36) and IX.C.

- •        Class Counsel will apply to the Court for an award of attorney's fees up to $91,666.67 and costs up to $2,500, to be paid from the Settlement Fund, to compensate Class Counsel for investigating the facts, prosecuting the lawsuit,

negotiating the Settlement, causing Catalina Express to implement a new compliance policy concerning FACTA, and ensuring that the Settlement is properly implemented and administered.  Settlement Agreement I.(12) and IX.B.

• Class Counsel's motion for Class Counsel's Fees and Expenses and the Class Representative's Service Award will be posted on the Settlement website no later than 30 calendar days before the Final Approval Hearing scheduled by the Court.  Any objection must be filed with the Court and also served on Class Counsel and Defendant's Counsel no later than 21 calendar days before the Final Approval Hearing, or as the Court otherwise directs.  Settlement Agreement VII.B.

## V.    THE CLASS

For the purposes of the Settlement, Plaintiff and Catalina Express have stipulated to the certification of the following Class: All residents of the United States (including Puerto Rico) who, at any time during the period of March 6, 2013 and March 9, 2015, made a credit or debit card purchase at any physical Catalina Express ticket counter location (Avalon, Dana Point, Long Beach, San Pedro, or Two Harbors) and were provided a printed credit or debit card receipt that included a credit or debit card expiration date.  Excluded from the Class are (1) Catalina Express, its related entities, parent companies, subsidiaries and affiliates, and their respective officers, directors, and employees; (2) individuals who only purchased or reserved tickets on Catalina Express's website (http://catalinaexpress.com/); (3) individuals and/or entities who validly and timely opt-out of the Settlement; (4) consumers who previously have released their claims against Catalina Express with respect to the issues raised in this Litigation; and (5) any judge to whom this matter is assigned, and his or her immediate family (spouse, domestic partner, or children). Settlement Agreement I(10).

In reviewing a class action settlement, a "district court must assess whether a class exists." *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003).  The fundamental question "is not whether . . . plaintiffs have stated a cause of action or

will prevail on the merits, but rather whether the requirements of Rule 23 are met." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974).  This action meets these governing standards for certification under Rule 23(a) and Rule 23(b)(3).

### A.   <u>Numerosity</u>

Under Rule 23(a)(1), a class action may be maintained where "the class is so numerous that joinder of all members is impracticable."  "Although the absolute number of class members is not the sole determining factor, where a class is large in numbers, joinder will usually be impracticable."  *Jordan v. Los Angeles*, 669 F.2d 1311, 1319 (9th Cir. 1982).[6]

In *Jordan*, the Ninth Circuit determined that the proposed class sizes in that suit of 39, 64, and 71 were large enough such that the other factors need not be considered.  *Ibid.*  "The fact that the size of the proposed class has not been exactly determined is not a fatal defect in the motion; a class action may proceed upon estimates as to the size of the proposed class."  *In re Alcoholic Beverages Litig.*, 95 F.R.D. 321, 324 (D.C. N.Y. 1982); *In re Computer Memories Sec. Litig.*, 111 F.R.D. 675, 679 (N.D. Cal. 1986) (class certified where plaintiffs did not establish exact number of class members, but demonstrated that class would "obviously be sufficiently numerous").

Here, the approximately 275,000 credit and debit card transactions (Sawasaki Decl. ¶ 8.) demonstrates that the sheer number of class members easily surpasses the class sizes in *Jordan* which the Ninth Circuit deemed satisfied the numerosity requirement.  The fact that, by the very nature of the Class, its members are unknown and cannot be readily identified, further dictates that joinder is impracticable.  *Jordan*, 669 F.2d at 1319-1320.

---

[6] "Where the class is not so numerous, however, the number of class members does not weigh as heavily in determining whether joinder would be infeasible.  In the latter situation, other factors such as the geographical diversity of class members, the ability of individual claimants to institute separate suits, and whether injunctive or declaratory relief is sought, should be considered in determining impracticability of joinder." *Jordan*, *supra*, 669 F.2d at 1319.

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 2:15-cv-03289-AB-MRW

## B.   Commonality

Rule 23(a)(2) requires that there be "questions of law or fact common to the class."  This commonality requirement must be "construed permissively." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998).  "All questions of fact and law need not be common to satisfy the rule.  The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Ibid*.  Where a class is united by a common interest in determining whether a defendant's broad course of conduct is actionable, commonality is not defeated "by slight differences in class members' positions." *Blackie v. Barrack*, 524 F.2d 891, 902 (9th Cir. 1975).

> "This analysis does not turn on the number of common questions, but on their relevance to the factual and legal issues at the core of the purported class' claims. Compare *Dukes*, 131 S.Ct. at 2556 **('We quite agree that for purposes of Rule 23(a)(2), even a single common question will do.')** (internal quotation marks omitted), *Wang v. Chinese Daily News*, 737 F.3d 538, 544 (9th Cir. 2013) ('Plaintiffs need not show that every question in the case, or even a preponderance of questions, is capable of classwide resolution.'), *Mazza*, 666 F.3d at 589 ('[C]ommonality only requires a single significant question of law or fact.'), with *Dukes*, 131 S.Ct. at 2551 ('What matters to class certification is not the raising of common `questions'—even in droves.')" *Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161, 1165 (9th Cir. 2014).

Commonality cannot be disputed here.

All Class Members share two common legal questions – whether Catalina Express violated FACTA by printing the expiration date of debit and credit cards on receipts, and whether its practice of doing so was "willful."  None of the relevant questions relates to the conduct of the class members, but rather all focus on Catalina Express' conduct and culpability in violating FACTA. See, *e.g.*, *Tchoboian*

- 12 -

1  *v. Parking Concepts, Inc.*, 2009 WL 2169883 *5 (C.D. Cal. 2009), petition for

2  permission to appeal grant of certification denied October 20, 2009, 9th Cir. Docket

3  No. 09-80132 ("The overriding legal issue is whether [defendant']s alleged

4  noncompliance was willful so that the class members are entitled to statutory

5  damages.  Moreover, whether [defendant] violated FACTA is a combined question

6  of law and fact common to all members."); *Medrano v. WCG Holdings, Inc.*, 2007

7  WL 4592113 *2 (C.D. Cal. 2007) ("There is a common core of salient facts across

8  the class.  Each member of the proposed class received a non-compliant receipt from

9  [Defendant] after the applicable compliance deadline."); *Kesler v. Ikea U.S., Inc., et

10  al.*, 2008 WL 413268 *3 (C.D. Cal. 2008) ("In this case, the facts and legal issues of

11  each class member's claim are nearly, if not entirely, identical.  There is a common

12  core of salient facts across the class.  Each member of the proposed class received a

13  non-compliant receipt from IKEA after the December 4, 2006 FACTA compliance

14  deadline.  The overriding legal issue is whether IKEA's noncompliance was willful,

15  so that the class members are entitled to statutory damages.")  In addition to the

16  willfulness issue, all Class Members also share the other legal and factual issues

17  implicated by the passenger ticket, i.e., choice of law, notice of claim and time bar

18  provisions set forth in the passenger tickets.

19  **C.    Typicality**

20      Rule 23(a)(3) requires that the representative plaintiff have claims "typical of

21  the claims ... of the class."   "[R]epresentative claims are 'typical' if they are

22  reasonably co-extensive with those of absent class members; they need not be

23  substantially identical."  *Hanlon*, 150 F.3d at 1020.  Named plaintiffs need not be

24  "identically situated" with all other class members; rather, "[i]t is enough if their

25  situations share a 'common issue of law or fact' [citation] and are 'sufficiently

26  parallel to insure a vigorous and full presentation of all claims for relief.'"  *Cal.

27  Rural Legal Assistance, Inc. v. Legal Services. Corp.*, 917 F.2d 1171, 1175 (9th Cir.

28  1990).  Moreover, typicality refers to the "nature of the claim … of the class

representative, and not to the specific facts from which it arose or the relief sought." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992).   The test of typicality is thus "whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Ibid.*

Here, Plaintiff and all other Class Members allege the same injury, violation of their FACTA rights resulting from the same course of conduct — the printing of their card expiration date on credit or debit card receipts.  Accordingly, this lawsuit is based on conduct which is not unique to Plaintiff, but on standardized, uniform conduct that is common to all Class Members.   Moreover, the same relief, specifically, statutory damages under 15 U.S.C. § 1681n, is sought for all Class Members for Catalina Express' "willful" violation of FACTA.   Accordingly, the typicality requirement is satisfied. *Tchoboian*, 2009 WL 2169883 *5 (C.D. Cal. 2009) (holding that typicality is satisfied because "[Plaintiff]'s claim is, in fact, 'substantially identical' to the claims of the proposed class members-namely, he alleges that [defendant] issued him a noncompliant receipt in willful violation of the FACTA"); *Medrano*, 2007 WL 4592113 *3 (same); *Kesler*, 2008 WL 413268 *4 (same); *Murray v. GMAC Mortgage Corp.*, 2007 WL 1100608 *5 (N.D. Ill. 2007) ("Murray II") (typicality satisfied where, despite minor factual discrepancies, all putative class members had "the same essential characteristics"); *In re Activision Securities Litigation*, 621 F.Supp. 415, 428 (N.D. Cal. 1985) (finding that "the only material variation among class members is the amount of damages to which each member is entitled" and that "[s]uch differences are insufficient to defeat class certification.")

### D.   <u>Adequate Representation</u>

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class."  Representation is adequate if (1) class

counsel is qualified and competent and (2) the class representative and his or her counsel are not disqualified by conflicts of interest. *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978).

Here, there are no conflicts of interest between Plaintiff and Class Members. Plaintiff and each Class Member assert identical claims for statutory damages arising from the same facts, *i.e.*, Catalina express's printing of the expiration date of the respective credit or debit card on receipts.   Thus, there is no potential for conflicting interests in this action. *Abels v. JBC Legal Group, P.C.*, 227 F.R.D. 541, 545 (N.D. Cal. 2005) (no conflict where claims asserted by plaintiff and class members arise from defendants' use of form letters allegedly violating the Fair Debt Collection Practices Act).   Moreover, there is no basis for asserting against Plaintiff any unique defenses that Catalina Express could not assert against any other Class member.   Nor is there any basis to suggest that Plaintiff lacks sufficient zeal or competence.

Nor are their any conflicts with Plaintiff's counsel.  Plaintiff is represented by highly capable and competent counsel experienced in class action litigation, including FACTA lawsuits.   Yedalian Decl. ¶¶ 43-57.   *Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1162 (9th Cir. 2001) (adequacy established by mere fact that counsel were experienced practitioners).

## E.   Rule 23(b)(3) Requirements Are Met

Plaintiff and Catalina Express seek certification pursuant to Rule 23(b)(3), which authorizes certification if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."   FRCP 23(b)(3).   Rule 23(b)(3)'s predominance and superiority factors are satisfied.

//

- 15 -

### 1.    Predominance of Common Questions

To satisfy predominance, common questions of law or fact must "present a significant aspect of the case" and be capable of resolution "in a single adjudication." *Hanlon*, 150 F.3d at 1022-1023; *Culinary/Bartender Trust Fund*, 244 F.3d at 1163.

The predominance inquiry focuses on whether the class is "sufficiently cohesive to warrant adjudication by representation." *Culinary/Bartender Trust Fund*, 244 F.3d at 1162.  Central to this question "is the notion that the adjudication of common issues will help achieve judicial economy." *Zinser v. Accufix Research Institute, Inc.*, 253 F.3d 1188, 1189 (9th Cir. 2001).

In this case, whether Catalina Express violated FACTA "willfully" is the central issue that clearly predominates over any individual issues.  Whether Catalina Express did so depends upon facts concerning its own conduct — conduct that applies uniformly to all class members in this case.

That common issues predominate is also bolstered by the fact that the available remedy in this case is statutory damages.  As the Ninth Circuit explained in *Bateman v. American Multi-Cinema, Inc.*, 623 F.3d 708, 719 (9th Cir. 2010), "irrespective of whether Bateman and all the potential class members can demonstrate actual harm resulting from a willful violation, they are entitled to statutory damages."

That common issues predominate is also evidenced by the fact that all Class Members' claims involve the very same conduct by Catalina Express—the printing of receipts which contain the credit or debit card's expiration date.

"When common questions present a significant aspect of the case and they can be resolved

for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Hanlon*, 150 F.3d at 1022 (internal quotation marks omitted).

## 2.   Superiority

To determine whether the superiority requirements of Rule 23(b)(3) are satisfied, a court must compare a class action with alterative methods for adjudicating the parties' claims.  Lack of a viable alternative to a class action necessarily means that a class action satisfies the superiority requirement.  "[I]f a comparable evaluation of other procedures reveals no other realistic possibilities, [the] superiority portion of Rule 23(b)(3) has been satisfied." *Culinary/Bartender Trust Fund*, 244 F.3d at 1163; *Valentino v. Carter-Wallace*, 97 F.3d 1227, 1235-36 (9th Cir. 1996) ("a class action is a superior method for managing litigation if no realistic alternative exists").

In *Local Joint Executive Board of Culinary/Bartender Trust Fund*, the Ninth Circuit held that a class action met the superiority requirements of Rule 23(b)(3) where class members could recover, at most, damages in the amount of $1,330. Here, unless Class Members can show actual harm, they can recover, at most, statutory damages in an amount between $100 and $1,000 per violation.  As in *Culinary/Bartender Trust Fund*, "This case involves multiple claims for relatively small individual sums…. If plaintiffs cannot proceed as a class, some-perhaps most — will be unable to proceed as individuals because of the disparity between their litigation costs and what they hope to recover. 'Class actions ... may permit the plaintiffs to pool claims which would be uneconomical to litigate individually.'" *Id*. at 1163; see also *Hanlon*, 150 F.3d at 1023 (explaining that "In this sense, the proposed class action is paradigmatic"); *Yokoyama v. Midland Nat'l*, 594 F.3d 1087, 1094 (9th Cir. 2010); ($10,000-$15,000 not sufficient incentive to sue individually); *Chalk v. T-Mobile USA, Inc.*, 560 F.3d 1087, 1095 (9th Cir. 2009)  ("policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights").  In *Murray v. GMAC Mortgage Corp.*, 434 F.3d 948,

953 (7th Cir. 2006), a case involving the *identical* remedy provisions of the FCRA[7], the Seventh Circuit held as follows: "Rule 23(b)(3) was designed for situations such as this, in which the potential recovery is too slight to support individual suits, but injury is substantial in the aggregate."

The Supreme Court has similarly held. *Phillips Petroleum Co., v. Shutts*, 472 U.S. 797, 809 (1985) ("this lawsuit involves claims averaging about $100 per plaintiff; most of the plaintiffs would have no realistic day in court if a class action were not available"); *Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 338 n.9 (1980) ("damages claimed by the two named plaintiffs totaled $1,006.00. Such plaintiffs would be unlikely to obtain legal redress…. This, of course, is a central concept of Rule 23"); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 161 (1974) ("No competent attorney would undertake this complex antitrust action to recover so inconsequential an amount. Economic reality dictates that petitioner's suit [involving individual damage of $70] proceed as a class action or not at all").

In sum, as the Ninth Circuit explained in another FACTA case, the purpose of Rule 23(b)(3) is "to allow integration of numerous small individual claims into a single powerful unit." *Bateman*, 623 F.3d at 722.

The above authorities clearly dictate that the superiority requirements of Rule 23(b)(3) are satisfied here.

Consideration of the factors listed in Rule 23(b)(3) bolsters this conclusion. Ordinarily, these factors are (A) the interest of class members in individually controlling the prosecution of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by other class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the difficulties likely to be encountered in the management of a class action. However, when a court reviews a class action

---

[7] "FACTA and other provisions of the FCRA [the Fair Credit Reporting Act] share the same statutory damages provision, see 15 U.S.C. § 1681n." *Bateman, supra*, 623 F.3d at 715.

settlement, the fourth factor does not apply.   In deciding whether to certify a settlement class action, a district court "need not inquire whether the case, if tried, would present intractable management problems."   *Amchem Products Inc. v. Woodward*, 521 U.S. 591, 620 (1997).   The remaining factors set forth in Rule 23(b)(3)(A), (B) and (C) all favor class certification in this case.

First, Class Members have no particular interest in individually controlling the prosecution of separate actions.   Statutory damages cannot exceed $1,000, and the fact of the matter is that there is no other known separate action filed or prosecuted by any other class members.   Moreover, any Class member who desires to pursue actual damages could either seek them through the terms of this Settlement or opt-out of the Settlement.

Second, and as explained above, the parties are not aware of any other litigation regarding the FACTA violations at issue in this case.

Third, it is desirable to concentrate the litigation in this forum because all of the named parties, including Catalina Express, reside in California and the alleged FACTA violations involve Catalina Express' locations in California and within this district.   Moreover, Plaintiff and Catalina Express have reached a Settlement.   "With the settlement in hand, the desirability of concentrating the litigation in one forum is obvious."   *Elkins v. Equitable Life Ins. of Iowa*, 1998 WL 133747 *19 (M.D. Fla. 1998); *Strube v. American Equity Life Ins. Co.*, 226 F.R.D. 688, 697 (M.D. Fla. 2005) (third and fourth Rule 23(b)(3) factors are "conceptually irrelevant in the context of a settlement").

The conclusion is inescapable that there simply is no better method than a class action for resolving all the claims of the Class Members in this case.   The conclusion of the court in *Murray II*, where the court certified a case involving claims for statutory damages under the FCRA, applies equally here:

"This is a case where class certification presents the most efficient means of adjudicating the controversy.   The class is numerous but the

1   potential recovery for each class member is quite small.  Indeed, it is
2   exceedingly unlikely that many individuals would wish to go to court
3   for a potential recovery of $100-or that they could find counsel willing
4   to represent them." *Murray II*, 2007 WL 1100608 *7.

5   Finally, FACTA is a consumer protection statute which serves not just to
6   compensate, but also to "deter" future violations.  *Bateman*, 623 F.3d at 718.  As the
7   Ninth Circuit has also explained, this "deterrent purpose" of FACTA is served by
8   certification: "we are quite sure that certification of a class here would preserve, if
9   not amplify, the deterrent effect of FACTA." *Id.* at 723.

10  **VI.   THE TWO-STEP APPROVAL PROCESS**

11  There is a "strong judicial policy that favors settlements," particularly in class
12  actions and other complex cases where substantial resources can be conserved by
13  avoiding the time, cost, and rigors of continued litigation.  *Class Plaintiffs v. City of*
14  *Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992); *In re Pacific Enters. Sec. Litig.*, 47 F.3d
15  373, 378 (9th Cir. 1995).

16  A settlement of class litigation must be reviewed and approved by the Court.
17  FRCP Rule 23(e).  This is done in two steps: (1) an early (preliminary) review by
18  the trial court, and (2) a final review after notice has been distributed to the class
19  members for their comment or objections.  This Motion concerns the first step.

20  "The first step is a preliminary, pre-notification hearing to determine whether
21  the proposed settlement is 'within the range of possible approval.'" *Armstrong v.*
22  *Board of School Directors of the City of Milwaukee*, 616 F.2d 305, 314 (7th Cir.
23  1980) (quoting Manual for Complex Litigation § 1.46, at 53-55 (West 1977)).  The
24  purpose of this hearing is "to ascertain whether there is any reason to notify the class
25  members of the proposed settlement and to proceed with a fairness hearing."  *Ibid.*
26  "[I]f the proposed settlement appears to be the product of serious, informed, non-
27  collusive negotiations, has no obvious deficiencies, does not improperly grant
28  preferential treatment to class representatives or segments of the class, and falls

within the range of possible approval, then the court should direct that the notice be given to the class members of a formal fairness hearing.'" *In re Portal Software, Inc. Sec. Litig.*, 2007 WL 1991529 at * 5 (N.D. Cal. 2007) (quoting Manual for Complex Litigation, Second § 30.44 (1985)).

At the second step of the approval process (usually referred to as the fairness hearing or final approval hearing), after class members have been notified of the proposed settlement and have had an opportunity to be heard, the court makes a final determination whether the settlement is "fair, reasonable and adequate" under Rule 23(e).  *Armstrong*, 616 F.2d at 314.

Thus, the preliminary approval of the trial court is simply a conditional finding that the settlement appears to be within the range of acceptable settlements. As Professor Newberg comments, "The strength of the findings made by a judge at a preliminary hearing or conference concerning a tentative settlement proposal may vary.  The court may find that the settlement proposal contains some merit, is within the range of reasonableness required for a settlement offer, or is presumptively valid subject only to any objections that may be raised at a final hearing." *Newberg on Class Actions*, 4th Ed., § 11:26.

## VII.   THE PRESUMPTION OF FAIRNESS

Courts presume the absence of fraud or collusion in the negotiation of a settlement unless evidence to the contrary is offered.   In short, there is a presumption that the negotiations were conducted in good faith. *Newberg*, § 11:51, *In re Chicken Anti-Trust Litigation*, 560 F.Supp 957, 962 (N.D. Ga. 1980); *Priddy v. Edelman*, 883 F.2d 438, 447 (6th Cir. 1989); *Mars Steel Corp. v. Continental Illinois National Bank and Trust Co.*, 834 F.2d 677, 682 (7th Cir. 1987).  Courts do not substitute their judgment for that of the proponents, particularly where, as here, settlement has been reached with the participation of experienced counsel familiar with the litigation.  *Hammon v. Barry*, 752 F.Supp 1087, 1093 (D. D.C. 1990); *Steinberg v. Carey*, 470 F.Supp. 471, 474 (S.D. N.Y. 1979); *Sommers v. Abraham*

1  *Lincoln Federal Savings & Loan Assoc.*, 79 F.R.D. 571, 573-574 (E.D. Pa. 1978);

2  *In re Pacific Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995).

3      While the recommendations of counsel proposing the settlement are not

4  conclusive, the Court should take them into account and afford them "great

5  weight," particularly where, as here, they are capable and competent, have

6  experience with this type of matter, and have been intimately involved in this

7  litigation. *Nat'l Rural Telecomm. Coop. v. DirecTV*, 221 F.R.D. 523, 528 (C.D.

8  Cal. 2004) ("'Great weight' is accorded to the recommendation of counsel, who are

9  most closely acquainted with the facts of the underlying litigation. [citation.]  This

10 is because '[p]arties represented by competent counsel are better positioned than

11 courts to produce a settlement that fairly reflects each party's expected outcome in

12 the litigation.'"); *See also Newberg*, § 11:47.

13 **VIII.  THIS SETTLEMENT IS FAIR AND REASONABLE**

14     The Settlement is well within the range of reasonableness and preliminary

15 approval should be granted.  No single criterion determines whether a class action

16 settlement meets the requirements of Rule 23(e).  In connection with final approval

17 determinations, the Ninth Circuit has directed district courts to consider a variety of

18 factors without providing an "exhaustive list" or suggesting which factors are most

19 important. *Staton*, *supra*, 327 F.3d at 959.  "The relative degree of importance to be

20 attached to any particular factor will depend upon and be dictated by the nature of

21 the claim(s) advanced, the type(s) of relief sought, and the unique facts and

22 circumstances presented by each individual case."  *Officers for Justice v. Civil*

23 *Service Commission of City and County of San Francisco*, 688 F.2d 615, 625 (9th

24 Cir. 1982).  Indeed, "one factor alone may prove determinative in finding sufficient

25 grounds for court approval."  *Nat'l Rural Telecomm. Coop. v. DirecTV*, 221 F.R.D.

26 523, 525 (C.D. Cal. 2004); *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376

27 (9th Cir. 1993), *cert. denied*, 512 U.S. 1220 (1994).

28

Due to the impossibility of predicting any litigation result with certainty, a district court's evaluation of a settlement essentially amounts to "nothing more than 'an amalgam of delicate balancing, gross approximations and rough justice.'" *Officers for Justice,* 688 F.2d at 625.  The ultimate touchstone, however, is whether "class counsel adequately pursued the interests of the class as a whole." *Staton*, 327 F.3d at 961.  As the Ninth Circuit explained in *Officers for Justice*, the district court's role in evaluating a class action settlement is therefore tailored to meet that narrow objective.  Review under Rule 23(e) "must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties." *Officers for Justice,* 688 F.2d at 625.  Accordingly, the Ninth Circuit will not reverse a district court's approval of a class action settlement unless the settlement provisions clearly suggest the possibility that class interests gave way to self interest.  *Staton*, 327 F.3d at 961. Some of the factors which were considered in evaluating the reasonableness of this Settlement are as follows:

### A.   Risks of Continuing Litigation

Absent this Settlement, there are very real risks involved in continued litigation, including extensive delays, potential appeals and the possibility that Settlement Class members may ultimately end up with no recovery.  Yedalian Decl. ¶ 13.

### 1.   "Willfulness"

In order to recover any statutory damages and other remedies under 15 U.S.C. § 1681n, Plaintiff must show that Catalina Express engaged in "willful" conduct. However, Catalina Express has vigorously denied that its conduct was willful. Yedalian Decl. ¶ 15.  In contrast, Plaintiff believes, among other things, that the printing of the expiration date was reckless and obvious to Catalina Express and the result of a lack of adequate measures to safeguard consumer rights.  Yedalian Decl. ¶ 15.

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 2:15-cv-03289-AB-MRW

1   Regardless of how strongly the Parties feel about the merits, the Parties face
2   issues and risks concerning how the legal requirements for a "willful" violation of
3   FACTA will be applied to the particular facts of this case.  Yedalian Decl. ¶ 16.

4   ### 2.   Class Certification

5   The Parties have sharply divergent positions on class certification in this case,
6   absent a settlement.  Catalina Express has denied that for any purpose other than that
7   of settling this lawsuit, this action is appropriate for class treatment.  Settlement
8   Agreement XI.A.; Yedalian Decl. ¶ 17.

9   Plaintiff believes that the Ninth Circuit's decision in *Bateman v. American*
10  *Multi-Cinema, Inc.*, 623 F.3d 708 (9th Cir. 2010), which reversed the denial of class
11  certification in another FACTA case, strongly supports certification in this case.
12  Yedalian Decl. ¶ 18.

13  Yet, absent a settlement, class certification remains a hotly contested matter in
14  this case, and there are risks attendant in continued litigation of these issues,
15  including, at a minimum, delays and potential appeals.  Yedalian Decl. ¶ 19.

16  For example, after the Ninth Circuit's decision in *Bateman*, one district court
17  within the Central District denied class certification in a FACTA case, *Martin v.*
18  *Pacific Parking Systems, Inc.*, 2012 WL 2552694 (C.D. Cal. July 2, 2012).  On
19  September 6, 2012, the Ninth Circuit granted a Rule 23(f) petition for permission for
20  discretionary leave to appeal the district court's denial of certification in *Martin* (9th
21  Cir. Docket No. 12-80144), and on appeal it was held that the district court did not
22  abuse its discretion based upon the facts in that case.  2014 WL 3686135 (July 25,
23  2014).  Yedalian Decl. ¶ 20.

24  In sum, while Plaintiff feels strongly about certification in this case, *Martin* is
25  an example of a FACTA case demonstrating the risks inherent in certification,
26  including, at a minimum, delays and potential appeals.  Yedalian Decl. ¶ 21.

27  //

28  //

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 2:15-cv-03289-AB-MRW

### 3.    Choice of Law, Notice of Claim and Time Bar Provisions

As discussed above, Catalina Express filed a motion to dismiss on the grounds that, *inter alia*, there is a choice-of-law clause in Plaintiff's passenger ticket that expressly states that "the general maritime law of the United States" applies, and that regardless of the choice-of-law applied, Plaintiff's claims are time-barred by a contractual provision found in the passenger ticket which requires a notice of claim within 6 months and the filing of suit within 1 year and that such time-bar provisions are valid, fair and were reasonably communicated to Plaintiff.  Dkt. No. 10.   While Plaintiff disputes the effect of such provisions, If Catalina Express were to prevail on these issues they could be dispositive and afford Catalina Express a complete defense.  Yedalian Decl. ¶ 22.

### B.    <u>Substantial Benefits of Settlement Compared to Risks of Continued Litigation</u>

The Settlement provides for substantial benefits.  Yedalian Decl. ¶ 23.

The Settlement establishes a non-reversionary Settlement Fund in the amount of $275,000.  Settlement Agreement I(38).

Further, that each Class Member may make a Claim for each and every unique credit or debit card for which they can provide required documentation (and in an amount of up to $250 without showing actual harm) is considerable in that it is 2.5 times the minimum statutory damages ($100) available for a willful violation of FACTA.   Although compared to the maximum possible recovery of $1,000 in statutory damages, $250.00 is a 25% value (which is not insubstantial), the propriety of awarding *full* statutory damages to Settlement Class members who do not claim actual monetary loss is strongly disputed.  Many FACTA defendants have argued that lack of "actual harm" precludes, if not any award of statutory damages to begin with, at the very least "excessive" statutory damages.  Since it remains to be seen how courts will resolve such constitutional challenges to statutory damage awards under FACTA, the value negotiated by the Parties represents a fair compromise well

within the range of reasonableness.  Yedalian Decl. ¶ 25.  Moreover, for those Class Members who can submit more than one Claim (for example a Class Member who used 5 unique cards during the Class Period) such Class Member's recovery ($250 x 5) may exceed $1,000.

"The proposed settlement is not to be judged against a hypothetical or speculative measure of what *might* have been achieved by the negotiators."  *Officers for Justice*, *supra*, 688 F.2d at 625.  Moreover, as long as the Settlement is reasonable, it does not matter that under the best case scenario, the potential value of the case may be much higher.  *In re Cendant Corp., Derivative Action Litigation*, 232 F.Supp.2d 327, 336 (D. N.J. 2002) (approving settlement which provided less than 2% value compared to maximum possible recovery); *In re Heritage Bond Litigation*, 2005 WL 1594403 *27-28 (C.D. Cal. 2005) (median amounts recovered in settlement of shareholder class actions were between 2% - 3% of possible damages).

The cash benefits are also reasonable when compared to the value of similar benefits in other FACTA cases.  For example, in *In re Toys "R" Us–Delaware, Inc.—Fair And Accurate Credit Transactions Act (FACTA) Litigation*, No. cv–08–01980 MMM (FMOx), 295 F.R.D. 438, 447 (C.D. Cal. January 17, 2014), the Court found that the benefit of vouchers having a maximum combined value of $30.00 was reasonable in a case alleging nationwide FACTA violations against a much larger corporate defendant.

Another benefit is the fact that in response to this litigation, Catalina Express modified its credit and debit card printed-paper receipt format to obscure the card expiration date and adopted a policy of continued future compliance with FACTA's 15 U.S.C. Section 1681c(g)(1).  Sawasaki Decl. ¶ 7; Settlement Agreement at III.G. This FACTA compliance policy ensures that Catalina Express will not continue to violate the law, willfully, inadvertently or otherwise.  Yedalian Decl. ¶ 26.

Such non-pecuniary benefits are properly considered in judging the results of the lawsuit. *See*, *e.g.*, *Craft v. County of San Bernardino*, 624 F.Supp.2d 1113, 1121, (C.D. Cal. 2008) (taking into account fact that, in addition to monetary aspects, the defendant stopped the practices at issue). This is especially true with a consumer protection statute such as FACTA which, as the Ninth Circuit has held, serves both a compensatory and "deterrent purpose." *Bateman*, 623 F.3d at 718. "In fashioning FACTA, Congress aimed to 'restrict the amount of information available to identity thieves.'" *Ibid.* The non-pecuniary benefits achieve that substantial purpose.

The importance of such non-pecuniary benefits was also recently explained by the Ninth Circuit in a case involving another consumer protection statute, the Fair Debt Collection Practices Act:

> "The FDCPA is a consumer protection statute and was intended to permit, even encourage, attorneys like Lemberg to act as private attorney generals to pursue FDCPA claims. Moreover, plaintiffs have already benefitted and will continue to benefit from this case. Mickell admits that he has ceased his practice of sending letters to debtor's workplaces, a benefit to all class members. Furthermore, certifying the class will serve a 'deterrent' component to other debt collectors who are engaging, or consider engaging in this type of debt collection tactic." *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1031 (9th Cir. 2012).

**C.** **Agreement Provides That Change Of Law Before Final Approval of Settlement Will Not Compromise Settlement Class Members' Benefits**

A further benefit of the Settlement assures that if there is an intervening change of law before final approval of the Settlement, the Settlement and Settlement benefits will continue to remain valid, enforceable and available to Settlement Class members. Settlement Agreement III.H.

1    The significance of this benefit cannot be understated.  For example, as
2    explained by the Ninth Circuit in *Bateman*, in 2008 (while many FACTA lawsuits
3    were then pending) Congress enacted the Credit and Debit Card Receipt
4    Clarification Act ("Clarification Act").  The Clarification Act retroactively granted a
5    *temporary* immunity from statutory damages for FACTA violations to those
6    defendants that printed an *expiration date* "between December 4, 2004, and June 3,
7    2008 [the date the Clarification Act was enacted]."  *Bateman*, *supra*, 623 F.3d at
8    717.  As a result of the change of law imposed by the Clarification Act, many
9    FACTA class action cases were dismissed without any recovery for consumers.
10   Yedalian Decl. ¶ 28.

11   The risks posed by potential changes in the law through judicial opinions
12   likewise cannot be understated, particularly in the dynamic area of statutory damage
13   issues.  For example, in a case involving another statute, the Real Estate Settlement
14   Procedures Act of 1974 ("RESPA"), the Ninth Circuit reaffirmed the principle that a
15   violation of statute gives rise to Article III standing, even in the absence of actual
16   monetary damages: "The injury required by Article III can exist solely by virtue of
17   'statutes creating legal rights, the invasion of which creates standing.'"  *Edwards v.*
18   *First Am. Corp.*, 610 F.3d 514, 517 (9th Cir. 2010).  However, the United States
19   Supreme Court granted *certiorari* in the *Edwards* case to consider the Article III
20   standing issue.  *First Am. Fin. Corp. v. Edwards*, 131 S.Ct. 3022 (June 20, 2011).
21   The Supreme Court's anticipated decision was expected to have potentially far
22   reaching effects in the area of statutory damage cases.  The Supreme Court's grant of
23   *certiorari* caused substantial uncertainty and provided defendants facing statutory
24   damage allegations with a potential defense that the law may change.  On the last
25   day of the Supreme Court's term, the Supreme Court dismissed the writ of certiorari
26   as improvidently granted.  *First Am. Fin. Corp. v. Edwards*, 132 S.Ct. 2536, 2537
27   (June 28, 2012).  Thus, while no change of law occurred as a result of the Supreme
28   Court's actions in *Edwards*, these events likewise demonstrate the potential for

- 28 -

changes in law and the real benefits conferred by the Settlement which safeguards against any such potential changes.  Yedalian Decl. ¶ 29.

Indeed, the issue of statutory damages is once again before the Supreme Court as a result of *certiorari* granted in *Robins v. Spokeo, Inc.*, 742 F.3d 409 (9th Cir. 2014).  See *Spokeo, Inc. v Robins*, 135 S.Ct. 1892 (*certiorari* granted April 27, 2015).  *Spokeo* is a matter which Catalina Express also addressed in its motion to dismiss.  Dkt. No. 10 at p 19:13-17 and fn.21.

**D.     The Settlement Is The Product of Extensive Arm's-Length Negotiations**

As discussed above, the Settlement Agreement is the product of extensive, adversarial, arm's-length discussions, negotiations, correspondence, factual and legal investigation and research, and careful evaluation of the respective parties' strengths and weaknesses.  Yedalian Decl. ¶¶ 30-34.

**IX.    PROPOSED NOTICE TO THE CLASS SHOULD BE APPROVED**

Rule 23(e)(1) provides that: "The court must direct notice in a reasonable manner to all class members who would be bound by the [settlement] proposal."

Rule 23(c)(2)(B) provides that, in any case certified under Rule 23(b)(3), the court must direct to class members the "best notice that is practicable under the circumstances."  Like Rule 23(e)(1), Rule 23(c)(2)(B) does not require actual notice or that a notice be actually received.  *Silber v. Mabon*, 18 F.3d 1449, 1454 (9th Cir. 1994).  Notice need only be given in a manner "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

Here, Catalina Express does not know, nor does Catalina Express have access to any information that would enable it to determine, the postal addresses, email addresses, or facsimile numbers of absent Class Members.  Sawasaki Decl. ¶ 9.

Plaintiff and Catalina Express have therefore agreed that notice to the Settlement Class members will be given in the following ways:

**Short-Form Notice**

A copy of the Short-Form Notice will be posted at each of Catalina Express' ticket counters in Avalon, Dana Point, Long Beach, San Pedro, and Two Harbors where tickets are available for purchase, in person for a ninety (90) day period commencing ten (10) calendar days from the date the Court issues a Preliminary Approval Order.  The Short-Form Notice will be displayed in direct view of customers where in-person ticket purchases can be made using a credit card or debit card.  Catalina Express employees will have copies on hand of the Short-Form Notice to provide to customers upon request.  Settlement Agreement IV.A. The Short-Form Notice will include the Settlement website address and the Claims Administrator's toll-free telephone number which Class Members may use to obtain further information.  Settlement Agreement, Exh. A.

**Settlement Website, Full Notice and Claim Form**

For at least a one hundred eighty (180) day period following the grant of Preliminary Approval, the Claims Administrator will provide a viewable and printable Long-Form Notice and Claim Form, via a Settlement website, containing a description of the settlement terms.  Settlement Agreement IV.B.

In a case like this, where neither the names nor addresses of Class members can be ascertained despite reasonable effort, notice by publication and website clearly suffices. *Mirfasihi v. Fleet Mortgage Corp.*, 356 F.3d 781, 786 (7th Cir. 2004) (notice by publication and website adequate where individual notice impossible; also recognizing increasing importance of website notice as a substitute form of notice); *Battle v. Liberty National Life Ins. Co.*, 770 F.Supp. 1499, 1515, fn.47 (N. D. Ala. 1991) (individual notice not required where absent members are not identified and cannot be located through diligent efforts) *affirmed*, 974 F.2d 1279 (11th Cir. 1992). The prominent and continuous (90-day) posting of notices at

each and every one of Catalina Express' walk-up ticket counter locations, which targets Class members who have a history of visiting such locations, in addition to the Settlement website notice, leaves no room for doubt that Plaintiff and Catalina Express have agreed to provide the best notice under the circumstances.

## X.   REASONABLE ATTORNEY'S FEES AND COSTS WILL BE SOUGHT IN CONNECTION WITH FINAL APPROVAL OF THE SETTLEMENT

At the time of final approval of the Settlement, Class Counsel will apply to the Court for an award of attorney's fees of $91,666.67 and costs up to $2,500, to be paid from the Settlement Fund, to compensate Class Counsel for investigating the facts, prosecuting the lawsuit, negotiating the Settlement, drafting the Settlement documents, attempting to obtain the Court's preliminary and final approval of the Settlement, causing Catalina Express to implement a new compliance policy concerning FACTA, and ensuring that the Settlement is properly implemented and administered.  Settlement Agreement I.(12) and IX.B; Yedalian Decl. ¶ 35.

While, in connection with final approval, Class Counsel intends to substantiate fees by providing an account of time devoted to this case, there are a few things worth mentioning now concerning fees.

In addition to the monies recovered by this Settlement, there are also non-pecuniary benefits resulting from the fact that, in response to this litigation, Catalina Express modified its credit and debit card printed-paper receipt format to obscure the card expiration date and adopted a policy of continued future compliance with FACTA's 15 U.S.C. Section 1681c(g)(1).  Sawasaki Decl. ¶ 7; Settlement Agreement at III.G.  *See*, *e.g.*, *Craft v. County of San Bernardino*, 624 F.Supp.2d 1113, 1121, (C.D. Cal. 2008) (taking into account fact that, in addition to monetary aspects, the defendant stopped the practices at issue and explaining that

1   "'Attorneys' fees [in class action cases] may be awarded even though the benefit
2   conferred is purely non-pecuniary in nature.'").

3       It should also not be lost on the Court that Class Counsel has borne, and
4   continues to bear, the entire risk of litigation associated with the lawsuit on a pure
5   contingency basis, and that as a result of the time committed by Class Counsel to
6   this matter, Class Counsel was precluded from taking on other matters which were
7   available.   Yedalian Decl. ¶ 38.

8       Again, Class Counsel will address these issues in further detail when
9   requesting fees in connection with final approval.

10      The fees and costs that will be requested in connection with final approval are
11  reasonable and further justified by the results achieved, the time incurred and risks
12  undertaken.  Yedalian Decl. ¶ 40.

## XI.   A REASONABLE INCENTIVE AWARD WILL BE SOUGHT FOR THE NAMED PLAINTIFF IN CONNECTION WITH FINAL APPROVAL OF THE SETTLEMENT

16      At the time of final approval of the Settlement, Class Counsel will request,
17  on behalf of the named Plaintiff, Larry Tran, an incentive (service) award of
18  $5,000, to be paid from the Settlement Fund, to compensate Plaintiff for his
19  services as the Class Representative.   Settlement Agreement I.(36) and IX.C.
20  Plaintiff was subjected to the risk of intrusive discovery, risked liability for defense
21  costs in the event the litigation was unsuccessful, and contributed valuable time and
22  resources during the pendency of the litigation, all of which will be further detailed
23  in connection with final approval proceedings.  Yedalian Decl. ¶ 41.

24      "Incentive *awards* are fairly typical in class action cases." *Rodriguez v. West*
25  *Publishing Corp.*, 563 F.3d 948, 958-959 (9th Cir. 2009).   "[They] are intended to
26  compensate class representatives for work done on behalf of the class, to make up
27  for financial or reputational risk undertaken in bringing the action, and, sometimes,
28  to recognize their willingness to act as a private attorney general." *Ibid.*

In *Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685, 694 (N.D. Ga. 2001), the court approved incentive awards of $300,000 to each named plaintiff in recognition of the services they provided to the class by responding to discovery, participating in the mediation process and taking the risk of stepping forward on behalf of the class. In *Van Vranken v. Atl. Richfield Co.*, 901 F.Supp. 294, 300 (N.D. Cal. 1995), a $50,000 incentive award was approved for similar participation.

The requested enhancement award in the amount of $5,000 to the only Class Representative is modest and should be approved in connection with final approval. Yedalian Decl. ¶ 42.

## XII.   CONCLUSION

The proposed class action Settlement is well within the range of reasonable settlements.   It is non-collusive, and it was achieved as the result of informed, extensive, and arm's-length negotiations conducted by experienced counsel.

Plaintiff respectfully requests that the Court grant preliminary approval of the proposed settlement, sign and enter the proposed Order, and set a final approval hearing on or about 110 days after the date that the Court grants preliminary approval of the Settlement.

Respectfully submitted,

DATED:  December 18, 2015    CHANT & COMPANY
A Professional Law Corporation

By: ___/S/ – Chant Yedalian_____
Chant Yedalian
Counsel For Plaintiff

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 2:15-cv-03289-AB-MRW

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Court using the CM/ECF system which will send notification of such filing to the electronic service list for this case.

Dated: December 18, 2015

CHANT & COMPANY
A Professional Law Corporation

By:   /S/  Chant Yedalian
          Chant Yedalian

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 2:15-cv-03289-AB-MRW