Chant Yedalian, State Bar No. 222325
(chant@chant.mobi)
CHANT & COMPANY
A Professional Law Corporation
1010 N. Central Ave.
Glendale, CA 91202
Phone: 877.574.7100
Fax: 877.574.9411

Counsel for Plaintiff

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LARRY TRAN, on behalf of himself and all others similarly situated, | Case No.: 2:15-cv-03289-AB-MRW |
| Plaintiff, | **NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT** |
| v. | [Filed concurrently with Declaration of Kelly Kratz, Declaration of Paul Sawasaki, Declaration of Paul Sawasaki Re Final Approval; Declaration of Michael Grimaldi; Declaration of Larry Tran, Declaration of Chant Yedalian, and [Proposed] Order and Judgment, lodged herewith] |
| CATALINA CHANNEL EXPRESS, INC. (d/b/a Catalina Express); and DOES 1 through 10, inclusive, | |
| Defendants. | |
| | **HEARING**<br>Date:  August 1, 2016<br>Time:  10:00 a.m.<br>Courtroom:  4 (2nd Floor)<br>Judge: Hon. Andre Birotte Jr. |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD HEREIN:

PLEASE TAKE NOTICE THAT on August 1, 2016 at 10:00 a.m. or as soon thereafter as the matter may be heard before the Honorable Andre Birotte Jr. in Courtroom 4 (2nd Floor), located at 312 North Spring Street, Los Angeles, California 90012, Plaintiff, Larry Tran, on behalf of himself and on behalf of the Class, will and hereby does move the Court, pursuant to Federal Rules of Civil Procedure Rule 23, for an Order and Judgment granting final approval of the proposed class action settlement on the terms and conditions set forth in the Class Action Settlement Agreement and Release (hereinafter sometimes referred to as the "Settlement Agreement"),[1] as later partially modified by the Supplement And Amendment To Settlement Agreement And Release ("Amendment").[2]

Plaintiff further moves the Court for an Order:

1.    Confirming its previous findings that the requirements for class certification, for settlement purposes, are satisfied;

2.    Certifying the Class for settlement purposes;

3.    Appointing Plaintiff Larry Tran as the Class Representative for the Class;

4.    Appointing attorney Chant Yedalian of Chant & Company A Professional Law Corporation as Class Counsel for the Class;

5.    Appointing Dahl Administration as the Claims Administrator to administer the Settlement;

6.    Finding that the Settlement is fair, adequate and reasonable and complies with Rule 23(e) of the Federal Rules of Civil Procedure;

---

[1] A copy of the Settlement Agreement is attached to the Declaration of Chant Yedalian as Exhibit 1.  Capitalized terms shall have the same meanings as in the Settlement Agreement, unless indicated otherwise.

[2] A copy of the Amendment is attached to the Declaration of Chant Yedalian as Exhibit 2.

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 2:15-cv-03289-AB-MRW

7.    Finding that the notice of Settlement directed to the Class has been completed in conformity with the Court's orders;

8.    Binding all Class members who did not timely exclude themselves from the Settlement to the Settlement Agreement, including the release contained in Section VIII of the Settlement Agreement;

9.    Directing the Parties and Claims Administrator to effectuate all terms of the Settlement Agreement;

10.   Providing that each of the Parties is to bear its own fees and costs except as expressly provided in the Settlement Agreement or in the Court's order(s) on Motion For Award Of Attorney's Fees And Costs To Class Counsel And Incentive Payment To The Class Representative; and

11.   Dismissing the Action with prejudice in accordance with the terms of the Settlement Agreement; however, the Court shall retain continuing jurisdiction: (i) to decide the Motion For Award Of Attorney's Fees And Costs To Class Counsel And Incentive Payment To The Class Representative and make and enter an order(s) wherein the Court will determine the amount of attorney's fees and costs to award to Class Counsel and the amount of the incentive payment to award to the Class Representative, and (ii) to interpret, implement and enforce the Settlement, and all orders and judgment entered in connection therewith.

     This Motion is based upon this Notice of Motion and Motion, the Declarations, Exhibits and other documents filed concurrently in support thereof, the papers and pleadings on file in this action, and upon such other and further evidence as the Court may adduce at the time of the hearing.

1

2
DATED:  June 30, 2016          CHANT & COMPANY
3                                 A Professional Law Corporation

4

5                               By:  /S/ – Chant Yedalian
6                                    Chant Yedalian
                                     Counsel For Plaintiff
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 2:15-cv-03289-AB-MRW

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION…………………………..…………………………………1

II.     FACTUAL SUMMARY……………………………………………………...1

III.    SETTLEMENT DISCUSSIONS ……………………..………..…………….3

IV.    NOTICE HAS BEEN PROVIDED TO CLASS MEMBERS IN CONFORMITY WITH THIS COURT'S ORDERS AND NOT A SINGLE CLASS MEMBER HAS OPTED-OUT, OBJECTED OR REQUESTED TO BE HEARD………………………...……5

     A.     No Opt-Outs……………………………………………………………..7

     B.     No Objections………………………………………………………….…7

     C.     No Notice of Intention to Appear……………………………………...7

V.     CAFA NOTICE HAS BEEN PROVIDED TO THE APPROPRIATE GOVERNMENT OFFICIALS AND THEY HAVE NOT OBJECTED OR INTERVENED............................................................................................8

VI.    THE LACK OF ANY OPT-OUTS, OBJECTIONS AND REQUESTS TO APPEAR PROVIDES FURTHER SUPPORT FOR THE SETTLEMENT.....8

VII.   THE SETTLEMENT………………………………………………………9

VIII.  THE CLASS………………………………………………………………12

     A.     Numerosity………………………………………………………...13

     B.     Commonality…………………………………………………………14

     C.     Typicality……………………………………………………………16

     D.     Adequate Representation……………………………………………17

     E.     Rule 23(b)(3) Requirements Are Met……………………………….18

          1.     Predominance of Common Questions………………..……….18

          2.     Superiority…………………………………………………….19

IX.    THE TWO-STEP APPROVAL PROCESS…………………………….…...22

X.     THE PRESUMPTION OF FAIRNESS…………………..………………....23

XI.    THIS SETTLEMENT IS FAIR AND REASONABLE………………………24

     A.     Risks of Continuing Litigation……………………………………..25

          1.     "Willfulness"……………..…………………………………25

i

1

## <u>TABLE OF CONTENTS</u>

2

**Page**

3
        2.     Class Certification...……………………………………………25

4
        3.     Choice of Law, Notice of Claim and Time Bar Provisions……26

5
  B.    Substantial Benefits of Settlement Compared to Risks of Continued Litigation……………………………………………………..…27

6

7
  C.    Agreement Provides That Change Of Law Before Final Approval of Settlement Will Not Compromise Class Members' Benefits…...…29

8
  D.    The Settlement Is The Product of Extensive Arm's-Length Negotiations……………………………………...30

9

10
  E.    The Findings Made In This Court's Orders Granting Preliminary Approval Likewise Support The Grant of Final Approval…………...30

11
  F.    The Lack Of Any Opt-Outs, Objections And Requests To Appear Also Supports The Grant of Final Approval…………………………30

12
XII.   CONCLUSION…...……………………………………………31

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# <u>TABLE OF AUTHORITIES</u>

<u>Federal Cases</u>                                                                    **Page(s)**

*Abels v. JBC Legal Group, P.C.*
    227 F.R.D. 541 (N.D. Cal. 2005)……………………………………………17

*Amchem Products Inc. v. Woodward*
    521 U.S. 591 (1997)…………………………………………………………21

*Armstrong v. Board of School Directors of the City of Milwaukee*
    616 F.2d 305 (7th Cir. 1980)………………………………………………..23

*Bateman v. American Multi-Cinema, Inc.*
    623 F.3d 708 (9th Cir. 2010)……..……………..............18-19, 20, 22, 26, 28, 29

*Blackie v. Barrack*
    524 F.2d 891 (9th Cir. 1975)………………………………………………14

*Cal. Rural Legal Assistance, Inc. v. Legal Sevs. Corp.*
    917 F.2d 1171 (9th Cir. 1990)………………………………………………16

*Chalk v. T-Mobile USA, Inc.*
    560 F.3d 1087 (9th Cir. 2009)………………………………………………20

*Class Plaintiffs v. City of Seattle*
    955 F.2d 1268 (9th Cir. 1992)……………………………………….........22

*Craft v. County of San Bernardino*
    624 F.Supp.2d 1113 (C.D. Cal. 2008)…………..……………...............28

*Deposit Guar. Nat'l Bank v. Roper*
    445 U.S. 326 (1980)……………………………………………….................20

*Eisen v. Carlisle & Jacquelin*
    417 U.S. 156 (1974)…………………..………………………………...13, 20

*Elkins v. Equitable Life Ins. of Iowa*
    1998 WL 133747 (M.D. Fla. 1998)…………………………………...21-22

*Evon v. Law Offices of Sidney Mickell*
    688 F.3d 1015 (9th Cir. 2012)………………………………………………29

*Hammon v. Barry*
    752 F.Supp 1087 (D. D.C. 1990)……………………………..........................23

*Hanlon v. Chrysler Corp.*
    140 F.3d 1011 (9th Cir. 1998)…………………..……14, 16, 18, 19, 20

*Hanon v. Dataproducts Corp.*
    976 F.2d 497 (9th Cir. 1992)………………………………………………...16

**Page(s)**

*In re Activision Securities Litigation*
    621 F.Supp. 415 (N.D. Cal. 1985)……………….......................................17

*In re Alcoholic Beverages Litigation*
    95 F.R.D. 321 (D.C. N.Y. 1982)……… …………...........................13-14

*In re Cendant Corp., Derivative Action Litigation*
    232 F.Supp.2d 327 (D. N.J. 2002)……………………………………27-28

*In re Chicken Anti-Trust Litigation*
    560 F.Supp 957 (N.D. Ga. 1980)………………………………………...23

*In re Computer Memories Sec. Litig.*
    111 F.R.D. 675 (N.D. Cal. 1986)………………………………………...14

*In re Heritage Bond Litigation*
    2005 WL 1594403 (C.D. Cal. 2005)…………………………………….28

*In re Mego Fin. Corp. Sec. Litig.*
    213 F.3d 454 (9th Cir. 2000)………………………………………….….5

*In re Pacific Enters. Sec. Litig.*
    47 F.3d 373 (9th Cir. 1995)…………………...……………………22, 23

*In re Toys "R" Us–Delaware, Inc.—Fair And Accurate Credit Transactions Act (FACTA) Litigation*
    295 F.R.D. 438 (C.D. Cal. 2014)………………………………………28

*Jimenez v. Allstate Ins. Co.*
    765 F.3d 1161 (9th Cir. 2014)……………………………………......14-15

*Jordan v. Los Angeles*
    669 F.2d 1311 (9th Cir. 1982)……………..…….............................13, 14

*Kesler v. Ikea U.S., Inc., et al.*
    2008 WL 413268 (C.D. Cal. 2008)………….............................15, 17

*Lerwill v. Inflight Motion Pictures, Inc.*
    582 F.2d 507 (9th Cir. 1978)…………. …………………………...17

*Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*
    244 F.3d 1152 (9th Cir. 2001)……………..……………………...............18

*Mars Steel Corp. v. Continental Illinois National Bank and Trust Co.*
    834 F.2d 677 (7th Cir. 1987)………………………………………23

*Martin v. Pacific Parking Systems, Inc.,*
    2012 WL 2552694 (C.D. Cal. July 2, 2012),
    Rule 23(f) petition for permission for discretionary
    leave to appeal the District Court's denial of certification
    granted by 9th Cir. Docket No. 12-80144,
    *affirmed* 2014 WL 3686135 (July 25, 2014)...………………………26

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 2:15-cv-03289-AB-MRW

**Page(s)**

*Medrano v. WCG Holdings, Inc.*
2007 WL 4592113 (C.D. Cal. 2007)……………………………….....15, 17

*Murray v. GMAC Mortgage Corp.*
434 F.3d 948 (7th Cir. 2006)………...……………………….........20

*Murray v. GMAC Mortgage Corp. ("Murray II")*
2007 WL 1100608 (N.D. Ill. 2007)…………..........…………………17, 22

*Nat'l Rural Telecomm. Coop. v. DirecTV*
221 F.R.D. 523 (C.D. Cal. 2004)…..………………….........8, 23-24, 30

*Officers for Justice v. Civil Service Commission of City and County of San Francisco*
688 F.2d 615 (9th Cir. 1982)………………………..…….....24, 25, 27

*Phillips Petroleum Co. v. Shutts*
472 U.S. 797 (1985)………………………………….………..20

*Priddy v. Edelman*
883 F.2d 438 (6th Cir. 1989)……………....…………………………23

*Sommers v. Abraham Lincoln Federal Savings & Loan Assoc.*
79 F.R.D. 571 (E.D. Pa. 1978)……………………………….........…………23

*Staton v. Boeing Co.*
327 F.3d 938 (9th Cir. 2003)………………………….…………13, 24, 25

*Steinberg v. Carey*
470 F.Supp. 471 (S.D. N.Y. 1979)……………………………….....23

*Strube v. American Equity Life Ins. Co.*
226 F.R.D. 688 (M.D. Fla. 2005)………...……………………….22

*Tchoboian v. Parking Concepts, Inc.*
2009 WL 2169883 (C.D. Cal. 2009)…………………………………15, 16

*Torrisi v. Tucson Elec. Power Co.*
8 F.3d 1370 (9th Cir. 1993)………………………………………24

*Valentino v. Carter-Wallace*
97 F.3d 1227 (9th Cir. 1996)……………………………………19

*Yokoyama v. Midland Nat'l*
594 F.3d 1087 (9th Cir. 2010)……………………………….....20

*Zinser v. Accufix Research Institute, Inc.*
253 F.3d 1188 (9th Cir. 2001)……………………………….........18

**Page(s)**

**Federal Statutes**

15 U.S.C. § 1681 *et seq.*, Fair Credit Reporting Act ("FCRA")……………..2, 20, 22

15 U.S.C. § 1681(c)(g), Fair and Accurate
Credit Transactions Act ("FACTA")…………………………………..…*passim*

15 U.S.C. § 1681n…..………………………………………………..……2, 16, 20, 25

**Federal Rules of Civil Procedure ("FRCP")**

FRCP Rule 23………………………………………...…………….………13, 20

FRCP Rule 23(a)………………………………………………....…………13

FRCP Rule 23(a)(1)………………………………………………..…..13

FRCP Rule 23(a)(2)……………………………....……………….……14

FRCP Rule 23(a)(3)………………………….……………..……..…...16

FRCP Rule 23(a)(4)………………………………………..…………...17

FRCP Rule 23(b)(3)…………………………………...........13, 18, 19, 20, 21

FRCP Rule 23(b)(3)(A), (B), (C) and (D)…………………….…………...21-22

FRCP Rule 23(e)……………………………....…….............9, 22, 23, 24

FRCP Rule 23(f)………………………………………………………….26

**Other Authorities**

*Newberg on Class Actions*, 4th Ed………..…………………………….23, 24

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

## I.   INTRODUCTION

3        On April 4, 2016, this Court entered an Order granting preliminary approval

4   of the proposed class action settlement.  Dkt. No. 31.  As part of the same Order, the

5   Court approved a plan of notice to be directed to Class Members and set deadlines

6   by which Class Members may opt-out, object or request to be heard at the final

7   approval hearing.  Dkt. No. 31, ¶¶ 8-14.

8        As explained in further detail below, notice to Class Members has been

9   provided in conformity with the Court's Orders, and no Settlement Class Member

10   has opted-out, objected or requested to be heard at the final approval hearing.

11        Plaintiff, Larry Tran, on behalf of himself and on behalf of the Class, hereby

12   respectfully moves the Court for an Order and Judgment granting final approval of

13   the proposed class action Settlement.

14

## II.   FACTUAL SUMMARY

15        Plaintiff Larry Tran is a customer of defendant Catalina Channel Express, Inc.

16   ("Catalina Express").  Complaint ¶ 25.  Catalina Express is a California corporation

17   that operates a passenger ferry service.  Sawasaki Decl. ¶ 2.  Catalina Express

18   provides scheduled passenger service between three California mainland locations

19   (San Pedro, Long Beach and Dana Point) and two locations on Santa Catalina Island

20   (Avalon and Two Harbors).  Sawasaki Decl. ¶ 3.

21        Catalina Express operates a walk-up ticket counter at each of these five

22   locations.  Sawasaki Decl. ¶ 3.  Each of these ticket counter locations is open to

23   members of the public and offers for sale passenger tickets.  *Ibid.*  Customers who

24   purchase a passenger ticket from any one of these ticket counter locations using a

25   credit card or debit card are provided a printed-paper receipt.  *Id.* at ¶ 5.

26        On May 26, 2013, Mr. Tran made a purchase for passenger tickets from the

27   Catalina Express walk-up ticket counter location in Long Beach.  Tran Decl. ¶ 3.

28   Mr. Tran paid for his purchase with his credit card.  *Ibid.*  The printed-paper

customer receipt which Mr. Tran was provided at the point of sale had the expiration date of his credit card printed on the receipt.  *Ibid.*; Complaint ¶ 35.

Like Mr. Tran, during the Class Period of March 6, 2013 and March 9, 2015, most consumers who used a credit or debit card to purchase a ticket at any of Catalina Express' five walk-up ticket counter locations were provided a printed paper receipt that displayed their respective credit or debit card's expiration date. Sawasaki Decl. ¶¶ 4, 6.

During the Class Period, there were approximately 275,000 total walk-up credit or debit card transactions at Catalina Express' five ticket counter locations. Sawasaki Decl. ¶ 8.

The Fair and Accurate Credit Transactions Act ("FACTA"), which is a subset of the Fair Credit Reporting Act ("FCRA"), provides that any merchant which accepts credit and/or debit cards is prohibited from printing on electronically printed receipts "more than the last 5 digits of the card number <u>or</u> the expiration date upon any receipt provided to the cardholder at the point of sale or transaction." 15 U.S.C. § 1681c(g)(1).  A merchant who "willfully" fails to comply with FACTA is liable for (1) actual damages, if any, or statutory damages of not less than $100 and not more than $1,000, (2) punitive damages as may be awarded by the court, and (3) attorney's fees and costs.  15 U.S.C. § 1681n.

On March 6, 2015, Plaintiff filed this class-action case in California Superior Court for the County of Los Angeles (Case No. BC574615).  Plaintiff's Complaint alleges, *inter alia*, that Catalina Express willfully violated FACTA by printing the expiration date of credit and debit cards on electronically printed customer receipts printed at a point of sale or transaction.  Complaint ¶¶ 37-46.

On March 9, 2015, in response to this litigation, Catalina Express modified its credit and debit card printed-paper receipt format to obscure the card expiration date and adopted a policy of continued future compliance with FACTA's 15 U.S.C. Section 1681c(g)(1).  Sawasaki Decl. ¶ 7; Settlement Agreement at III.G.

1    Catalina Express thereafter removed the case to this Court and filed a motion
2    to dismiss on the grounds that, *inter alia*, there is a choice-of-law clause in
3    Plaintiff's passenger ticket that expressly states that "the general maritime law of the
4    United States" applies, that regardless of the choice-of-law applied, Plaintiff's claims
5    are time-barred by a contractual provision found in the passenger ticket which
6    requires a notice of claim within 6 months and the filing of suit within 1 year and
7    that such time-bar provisions are valid, fair and were reasonably communicated to
8    Plaintiff, and that, in any event, Plaintiff has not pled (and cannot plead) either a
9    willful or negligent violation of FACTA.  Dkt. No. 10.

10   **III.   SETTLEMENT DISCUSSIONS**

11   Beginning in late April 2015, Plaintiff and Catalina Express began to explore
12   settlement discussions.  Yedalian Decl. ¶ 3.   The settlement discussions carried over
13   into May 2015 and various proposals (oral and written) continued to be made and
14   considered as part of the discussions between Plaintiff and Catalina Express.    *Ibid*.
15   During these months, underlying facts and information were also exchanged
16   between Plaintiff and Catalina Express.   *Ibid*.   The Parties also explored and
17   considered different potential settlement structures/frameworks.

18   Unlike other FACTA cases, however, the defendant in this case raised certain
19   facts and issues that do not appear to have been raised in any other FACTA case.
20   For example, defendant pointed to the choice-of-law clause in Plaintiff's passenger
21   ticket to argue that general maritime law applies, that Plaintiff's claims are time-
22   barred by the provision in the passenger ticket which requires a notice of claim
23   within 6 months and the filing of suit within 1 year, and that such time-bar
24   provisions are valid, fair and were reasonably communicated to Plaintiff.  Defendant
25   asserted that these facts and issues provide it with a complete defense. Yedalian
26   Decl. ¶ 4.

27   Defendant also asserted that Plaintiff has not pled (and cannot plead) either a
28   willful or negligent violation of FACTA based on the facts and allegations made in

- 3 -

this particular case. Defendant asserted that this too provided it with yet another complete and distinct defense.[3] Yedalian Decl. ¶ 5.

Moreover, Defendant did not just make these arguments during the Parties' settlement negotiations and exchanges. Instead, while the Parties were continuing their negotiations in June 2015, Defendant filed a motion to dismiss with the Court wherein it formally briefed its arguments. Dkt. No. 10.

Defendant's formal motion framed these issues for further discussion and debate between the Parties and various exchanges (oral and written) continued to be made. Yedalian Decl. ¶ 7.

In order to effectively assess and address the matters raised by defendant and continue with the Parties' negotiations, Plaintiff's counsel researched the law and investigated the facts. Yedalian Decl. ¶ 8. Although Plaintiff's counsel is well versed with FACTA cases, the unique facts raised by defendant required special attention, legal research and factual investigation. *Ibid.* For example, defendant argued that not only were there choice of law and notice of claim and time bar provisions set forth in the passenger ticket but also that such terms were valid, fair and reasonably communicated. *Ibid.* In response, Plaintiff's counsel researched the legal and factual issues that these matters implicated and also consulted experts concerning the specific facts of this case. *Ibid.* This included consultations with a graphics expert concerning font sizes (as it relates to the Catalina Express passenger ticket and font sizes thereon) as well as an eye specialist (again, as it relates to the Catalina Express passenger ticket and font sizes thereon, as well as issues concerning the capacity of the human eye). *Ibid.*

---

[3] Unlike Defendant's other arguments, which do not appear to have been raised in any FACTA case, some courts have considered certain specific allegations of willfulness under FACTA but those cases relied upon by defendant involved different factual circumstances and allegations.

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 2:15-cv-03289-AB-MRW

Ultimately, after the many further exchanges that followed, Plaintiff and Catalina Express reached an agreement in August 2015 concerning the material terms of a proposed class-wide settlement.  Yedalian Decl. ¶ 9.

The negotiations and discussions did not, however, end there.  Yedalian Decl. ¶ 10.   In the months that followed, including until December 16, 2015, the parties continued to negotiate the particulars of their agreement, as well as the actual written terms that should be used to reflect their agreement.  *Ibid.*   Many drafts and redlined revisions were exchanged and the Parties thereafter met in-person on December 14, 2015 to try to resolve various remaining issues.  *Ibid.*

The Class Action Settlement Agreement and Release dated and signed on December 17, 2015 (hereinafter sometimes referred to as the "Settlement Agreement")[4], is a product of all of the extensive negotiations and exchanges between the Parties, following the factual and legal investigation and research concerning the Parties' respective claims and defenses.  Yedalian Decl. ¶ 11.

The Settlement Agreement is also based upon the information exchanged by the Parties, including the Declaration of Paul Sawasaki.[5]  Yedalian Decl. ¶ 12.

## IV.   NOTICE HAS BEEN PROVIDED TO CLASS MEMBERS IN CONFORMITY WITH THIS COURT'S ORDERS AND NOT A SINGLE CLASS MEMBER HAS OPTED-OUT, OBJECTED OR REQUESTED TO BE HEARD

Here, Catalina Express does not know, nor does Catalina Express have access to any information that would enable it to determine, the postal addresses,

---

[4]  A copy of the Settlement Agreement is attached to the Declaration of Chant Yedalian as Exhibit 1.  Capitalized terms shall have the same meanings as in the Settlement Agreement, unless indicated otherwise.  The Parties later partially modified the Settlement Agreement by entering into a Supplement And Amendment To Settlement Agreement And Release ("Amendment").  A copy of the Amendment is attached to the Declaration of Chant Yedalian as Exhibit 2.

[5]  "[I]n the context of class action settlements, 'formal discovery is not a necessary ticket to the bargaining table' where the parties have sufficient information to make an informed decision about settlement."  *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000).

email addresses, or facsimile numbers of absent Class Members.  Sawasaki Decl. ¶ 9.

Thus, pursuant to the Court-approved notice plan, notice was to be provided to Class Members in the following ways:

**Short-Form Notice**

A copy of the Short-Form Notice was to be posted at each of Catalina Express' ticket counters in Avalon, Dana Point, Long Beach, San Pedro, and Two Harbors where tickets are available for purchase, in person for a ninety (90) day period commencing ten (10) calendar days from the date the Court issues a Preliminary Approval Order.  The Short-Form Notice will be displayed in direct view of customers where in-person ticket purchases can be made using a credit card or debit card.  Catalina Express employees will have copies on hand of the Short-Form Notice to provide to customers upon request.  Settlement Agreement IV.A. The Short-Form Notice will include the Settlement website address and the Claims Administrator's toll-free telephone number which Class Members may use to obtain further information.  Settlement Agreement, Exh. A.

**Settlement Website, Full Notice and Claim Form**

For at least a one hundred eighty (180) day period following the grant of Preliminary Approval, the Claims Administrator will provide a viewable and printable Long-Form Notice and Claim Form, via a Settlement website, containing a description of the settlement terms.  Settlement Agreement IV.B.

**Catalina Express Company Website Notice**

For at least a one hundred eighty (180) day period following the grant of Preliminary Approval, Catalina Express shall post on the Schedule & Fares section of its company website (at the URL: http://www.catalinaexpress.com/schedule-fares.html) the following information and settlement website link:

"**NOTICE OF CLASS ACTION SETTLEMENT**

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 2:15-cv-03289-AB-MRW

If you purchased a passenger ticket using a credit or debit card at a Catalina Express ticket counter location (a physical Catalina Express ticket counter as opposed to a purchase made through a website or over the telephone) between March 6, 2013 and March 9, 2015, you may be entitled to benefits under a proposed class action settlement.

Click **here** for more information."  Amendment ¶ 2.

### Declarations From the Parties Concerning Compliance With Notice Plan

Filed concurrently with this Motion are the Declaration of Paul Sawasaki In Support of the Final Approval of the Class Action Settlement (¶¶ 2-4) and the Declaration of Kelly Kratz (¶¶ 3-4) which establish that notice to the Class has been provided in conformity with the Court-approved notice plan.

### A.    No Opt-Outs

Class Members were provided until June 17, 2016 to opt-out.  Dkt. No. 31, ¶ 19.

No Settlement Class Member opted-out during the opt-out period.   Kratz Decl. ¶ 5.

### B.    No Objections

Class Members were provided until June 17, 2016 to object to the terms of the Settlement.  Dkt. No. 31, ¶ 19.

During the objection period, no Class Member objected to the Settlement. Kratz Decl. ¶ 6.

### C.    No Notice of Intention to Appear

In addition to allowing Class Members an opportunity to opt-out or object, Class Members were also provided an opportunity to request permission to appear and speak at the final approval hearing.  Dkt. No. 31, ¶ 14.

Class Members were provided until June 17, 2016 to make such a request. Dkt. No. 31, ¶ 19.

As demonstrated by the Court's records in this case, to date, no Class Member has filed a request for permission to appear or speak at the final approval hearing.

## V. CAFA NOTICE HAS BEEN PROVIDED TO THE APPROPRIATE GOVERNMENT OFFICIALS AND THEY HAVE NOT OBJECTED OR INTERVENED

On December 23, 2015, pursuant to the Class Action Fairness Act, 28 U.S.C. §1715, written notice of this lawsuit and settlement was provided to the appropriate government entities.  Grimaldi Decl. ¶ 2.

Other than requests for certain information and copies of certain documents in this Action, no response or objection has been received from the CAFA Coordinators of any government entity, nor have any of them intervened as is demonstrated by the Court's records in this case.

## VI. THE LACK OF ANY OPT-OUTS, OBJECTIONS AND REQUESTS TO APPEAR PROVIDES FURTHER SUPPORT FOR THE SETTLEMENT

The lack of any opt-outs, objections and requests to appear provides further support for the Settlement.  "It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members."  *In re Omnivision Techs., Inc.*, 559 F.Supp.2d 1036, 1043 (N.D. Cal. 2008) (quoting *Nat'l Rural Telecomms. Coop. v. DirecTV*, 221 F.R.D. 523, 529 (C.D. Cal. 2004)). "The absence of a single objection to the Proposed Settlement provides further support for final approval of the Proposed Settlement."  *Nat'l Rural Telecomm. Coop.*, 221 F.R.D. at 529.

The lack of any objection from or intervention by the CAFA Coordinators of any government entity likewise provides further support for the settlement.

//

- 8 -

# VII.  THE SETTLEMENT

Subject to the Court's approval pursuant to Federal Rules of Civil Procedure ("FRCP") Rule 23(e), the Parties have agreed to settle this matter upon the terms and conditions set forth in the Settlement Agreement.

A summary of the terms of the Settlement is as follows:

• This Settlement concerns the printed-paper credit and debit card customer receipts that were issued at Catalina Express' five walk-up ticket counter locations (three mainland locations at San Pedro, Long Beach and Dana Point; and two locations on Santa Catalina Island at Avalon and Two Harbors).  Sawasaki Decl. ¶ 3; Settlement Agreement at I.

• During the Class Period of March 6, 2013 and March 9, 2015, there were approximately 275,000 total walk-up credit or debit card transactions at Catalina Express' five ticket counter locations and most consumers who used a credit or debit card to purchase a ticket at any of Catalina Express' five walk-up ticket counter locations were provided a printed paper receipt that displayed their respective credit or debit card's expiration date.  Sawasaki Decl. ¶¶ 4, 6 and 8.

• For the purposes of the Settlement, Plaintiff and Catalina Express have stipulated to the certification of the following Class: All residents of the United States (including Puerto Rico) who, at any time during the period of March 6, 2013 and March 9, 2015, made a credit or debit card purchase at any physical Catalina Express ticket counter location (Avalon, Dana Point, Long Beach, San Pedro, or Two Harbors) and were provided a printed credit or debit card receipt that included a credit or debit card expiration date.  Excluded from the Class are (1) Catalina Express, its related entities, parent companies, subsidiaries and affiliates, and their respective officers, directors, and employees; (2) individuals who only purchased or reserved tickets on Catalina Express's website (http://catalinaexpress.com/); (3) individuals and/or entities who validly and timely opt-out of the Settlement; (4) consumers who previously have released their claims against Catalina Express with

respect to the issues raised in this Litigation; and (5) any judge to whom this matter is assigned, and his or her immediate family (spouse, domestic partner, or children). Settlement Agreement I(10).

- Catalina Express will establish a non-reversionary "all-in" cash settlement fund in the total amount of $275,000.00 ("Settlement Fund") that will be used to pay for Claims, Class Counsel's Fees and Expenses, Notice costs, the Service Award, Claims Administrator costs, and any and all other "all-in" costs associated with the Settlement. Settlement Agreement I.(38).

- The Parties are not aware of any customer who has sustained any actual damages as a result of the printing of the expiration date on any of the subject receipts in this case.

- The Settlement allows each Class Member to submit a Claim for each unique credit card or debit card used to make a purchase at a Catalina Express ticket counter location during the Class Period.  If more than one credit or debit card was used during the Class Period, a separate Claim may be submitted for each.  A Claim Form must be completed and timely returned but a single Claim Form may be used to make more than one Claim.  Settlement Agreement III.B. and III.C.

- Those Class Members who do not claim actual damages may recover up to $250 for each Claim by timely submitting a Claim Form together with required documentation.  Settlement Agreement III.C.

- Those Class Members who claim actual damages may recover up to $500 for each Claim by timely submitting a Claim Form together with required documentation.  Settlement Agreement III.B.

- The required documentation for those Class Members who do not claim actual damages can consist of (1) either an original or copy of a Catalina Express ticket-counter receipt which shows the expiration date of the credit card or debit card; OR (2) an original or copy of a credit card or debit card statement showing that the Class Member made a transaction at a Catalina Express ticket counter location

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 2:15-cv-03289-AB-MRW

during the Class Period; OR (3) a credit or debit card transaction summary showing that the Class Member made a transaction at a Catalina Express ticket counter location during the Class Period).   In addition to this required documentation, those Class Members who submit a Claim for actual damages must also provide proof of actual damage that they sustained.   Settlement Agreement I.(35).

- Given the nature of this particular consumer class action case, the fact that Catalina Express does not know, nor does Catalina Express have access to any information that would enable it to determine, the postal addresses, email addresses, or facsimile numbers of absent Class Members, and experience with consumer class action claims-made rates, it is expected that that relatively few claims will be made and that a residue will result.  Accordingly, Plaintiff negotiated, and Catalina Express agreed to, a substantial fund as well as on a plan for the disposition of the anticipated residue that does NOT result in a reversion to Catalina Express.  Instead, if any residual funds from the Settlement Fund remain after payments are made to the Class Members, any and all such residual funds will be distributed to Public Counsel, which is the charitable entity that this Court approved in connection with its preliminary approval Order.  Dkt. No. 31, ¶ 15.

- On March 9, 2015, in response to this litigation, Catalina Express modified its credit and debit card printed-paper receipt format to obscure the card expiration date and adopted a policy of continued future compliance with FACTA's 15 U.S.C. Section 1681c(g)(1).  Sawasaki Decl. ¶ 7; Settlement Agreement III.G.

- The Parties agreed upon and the Court approved the augmented notice plan set forth in Section IV., above.  As also explained in Section IV., above, Class Members were provided until June 17, 2016 to opt-out of or object to the Settlement, and no Class Member opted-out or objected during this period.

- Settlement Class Members will have until October 15, 2016 to submit a Claim Form.  Dkt. No. 31, ¶ 19.

- 11 -

- • The Settlement, including the claims process, will be administered, by Dahl Administration, as approved by the Court. Settlement Agreement I.(9).

- • Class Counsel will apply to the Court for an incentive (service) award of up to $5,000 for the named Plaintiff, to be paid from the Settlement Fund, to compensate Plaintiff for his services as the Class Representative. Settlement Agreement I.(36) and IX.C.

- • Class Counsel will apply to the Court for an award of attorney's fees up to $91,666.67 and costs up to $2,500, to be paid from the Settlement Fund, to compensate Class Counsel for investigating the facts, prosecuting the lawsuit, negotiating the Settlement, causing Catalina Express to implement a new compliance policy concerning FACTA, and ensuring that the Settlement is properly implemented and administered. Settlement Agreement I.(12) and IX.B.

- • Class Counsel's motion for Class Counsel's Fees and Expenses and the Class Representative's Service Award will be posted on the Settlement website no later than July 2, 2016. Dkt. No. 31, ¶ 19. Any objection must be filed with the Court and also served on Class Counsel and Defendant's Counsel no later than July 11, 2016. Settlement Agreement VII.B. Dkt. No. 31, ¶ 19.

## VIII. THE CLASS

For the purposes of the Settlement, Plaintiff and Catalina Express have stipulated to the certification of the following Class: All residents of the United States (including Puerto Rico) who, at any time during the period of March 6, 2013 and March 9, 2015, made a credit or debit card purchase at any physical Catalina Express ticket counter location (Avalon, Dana Point, Long Beach, San Pedro, or Two Harbors) and were provided a printed credit or debit card receipt that included a credit or debit card expiration date. Excluded from the Class are (1) Catalina Express, its related entities, parent companies, subsidiaries and affiliates, and their respective officers, directors, and employees; (2) individuals who only purchased or reserved tickets on Catalina Express's website (http://catalinaexpress.com/); (3)

individuals and/or entities who validly and timely opt-out of the Settlement; (4) consumers who previously have released their claims against Catalina Express with respect to the issues raised in this Litigation; and (5) any judge to whom this matter is assigned, and his or her immediate family (spouse, domestic partner, or children). Settlement Agreement I(10).

In reviewing a class action settlement, a "district court must assess whether a class exists." *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003). The fundamental question "is not whether . . . plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974). This action meets these governing standards for certification under Rule 23(a) and Rule 23(b)(3).

### A.   <u>Numerosity</u>

Under Rule 23(a)(1), a class action may be maintained where "the class is so numerous that joinder of all members is impracticable." "Although the absolute number of class members is not the sole determining factor, where a class is large in numbers, joinder will usually be impracticable." *Jordan v. Los Angeles*, 669 F.2d 1311, 1319 (9th Cir. 1982).[6]

In *Jordan*, the Ninth Circuit determined that the proposed class sizes in that suit of 39, 64, and 71 were large enough such that the other factors need not be considered. *Ibid.* "The fact that the size of the proposed class has not been exactly determined is not a fatal defect in the motion; a class action may proceed upon estimates as to the size of the proposed class." *In re Alcoholic Beverages Litig.*, 95 F.R.D. 321, 324 (D.C. N.Y. 1982); *In re Computer Memories Sec. Litig.*, 111 F.R.D. 675, 679 (N.D. Cal. 1986) (class certified where plaintiffs did not establish exact

---

[6] "Where the class is not so numerous, however, the number of class members does not weigh as heavily in determining whether joinder would be infeasible. In the latter situation, other factors such as the geographical diversity of class members, the ability of individual claimants to institute separate suits, and whether injunctive or declaratory relief is sought, should be considered in determining impracticability of joinder." *Jordan*, *supra*, 669 F.2d at 1319.

1   number of class members, but demonstrated that class would "obviously be
2   sufficiently numerous").

3       Here, the approximately 275,000 credit and debit card transactions (Sawasaki
4   Decl. ¶ 8.) demonstrates that the sheer number of Class Members easily surpasses
5   the class sizes in *Jordan* which the Ninth Circuit deemed satisfied the numerosity
6   requirement.  The fact that, by the very nature of the Class, its members are
7   unknown and cannot be readily identified, further dictates that joinder is
8   impracticable.  *Jordan*, 669 F.2d at 1319-1320.

9       **B.**   **Commonality**

10      Rule 23(a)(2) requires that there be "questions of law or fact common to the
11  class."  This commonality requirement must be "construed permissively."  *Hanlon v.*
12  *Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998).  "All questions of fact and law
13  need not be common to satisfy the rule.  The existence of shared legal issues with
14  divergent factual predicates is sufficient, as is a common core of salient facts
15  coupled with disparate legal remedies within the class."  *Ibid*.  Where a class is
16  united by a common interest in determining whether a defendant's broad course of
17  conduct is actionable, commonality is not defeated "by slight differences in class
18  members' positions."  *Blackie v. Barrack*, 524 F.2d 891, 902 (9th Cir. 1975).

19          "This analysis does not turn on the number of common questions,
20      but on their relevance to the factual and legal issues at the core of the
21      purported class' claims. Compare *Dukes*, 131 S.Ct. at 2556 **('We quite**
22      **agree that for purposes of Rule 23(a)(2), even a single common**
23      **question will do.')** (internal quotation marks omitted), *Wang v. Chinese*
24      *Daily News*, 737 F.3d 538, 544 (9th Cir. 2013) ('Plaintiffs need not show
25      that every question in the case, or even a preponderance of questions, is
26      capable of classwide resolution.'), *Mazza*, 666 F.3d at 589
27      ('[C]ommonality only requires a single significant question of law or
28      fact.'), with *Dukes*, 131 S.Ct. at 2551 ('What matters to class certification

is not the raising of common `questions'—even in droves.')"  *Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161, 1165 (9th Cir. 2014).

Commonality cannot be disputed here.

All Class Members share two common legal questions – whether Catalina Express violated FACTA by printing the expiration date of debit and credit cards on receipts, and whether its practice of doing so was "willful."  None of the relevant questions relates to the conduct of the Class Members, but rather all focus on Catalina Express' conduct and culpability in violating FACTA. See, *e.g.*, *Tchoboian v. Parking Concepts, Inc.*, 2009 WL 2169883 *5 (C.D. Cal. 2009), petition for permission to appeal grant of certification denied October 20, 2009, 9th Cir. Docket No. 09-80132 ("The overriding legal issue is whether [defendant']s alleged noncompliance was willful so that the class members are entitled to statutory damages.  Moreover, whether [defendant] violated FACTA is a combined question of law and fact common to all members."); *Medrano v. WCG Holdings, Inc.*, 2007 WL 4592113 *2 (C.D. Cal. 2007) ("There is a common core of salient facts across the class.  Each member of the proposed class received a non-compliant receipt from [Defendant] after the applicable compliance deadline."); *Kesler v. Ikea U.S., Inc., et al.*, 2008 WL 413268 *3 (C.D. Cal. 2008) ("In this case, the facts and legal issues of each class member's claim are nearly, if not entirely, identical.  There is a common core of salient facts across the class.  Each member of the proposed class received a non-compliant receipt from IKEA after the December 4, 2006 FACTA compliance deadline.  The overriding legal issue is whether IKEA's noncompliance was willful, so that the class members are entitled to statutory damages.")  In addition to the willfulness issue, all Class Members also share the other legal and factual issues implicated by the passenger ticket, i.e., choice of law, notice of claim and time bar provisions set forth in the passenger tickets.

//

//

- 15 -

### C.   <u>Typicality</u>

Rule 23(a)(3) requires that the representative plaintiff have claims "typical of the claims ... of the class."   "[R]epresentative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical."  *Hanlon*, 150 F.3d at 1020.  Named plaintiffs need not be "identically situated" with all other class members; rather, "[i]t is enough if their situations share a 'common issue of law or fact' [citation] and are 'sufficiently parallel to insure a vigorous and full presentation of all claims for relief.'"  *Cal. Rural Legal Assistance, Inc. v. Legal Services. Corp.*, 917 F.2d 1171, 1175 (9th Cir. 1990).  Moreover, typicality refers to the "nature of the claim … of the class representative, and not to the specific facts from which it arose or the relief sought."  *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992).  The test of typicality is thus "whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct."  *Ibid*.

Here, Plaintiff and all other Class Members allege the same injury, violation of their FACTA rights resulting from the same course of conduct — the printing of their card expiration date on credit or debit card receipts.  Accordingly, this lawsuit is based on conduct which is not unique to Plaintiff, but on standardized, uniform conduct that is common to all Class Members.  Moreover, the same relief, specifically, statutory damages under 15 U.S.C. § 1681n, is sought for all Class Members for Catalina Express' "willful" violation of FACTA.  Accordingly, the typicality requirement is satisfied.  *Tchoboian*, 2009 WL 2169883 *5 (C.D. Cal. 2009) (holding that typicality is satisfied because "[Plaintiff]'s claim is, in fact, 'substantially identical' to the claims of the proposed class members-namely, he alleges that [defendant] issued him a noncompliant receipt in willful violation of the FACTA"); *Medrano*, 2007 WL 4592113 *3 (same); *Kesler*, 2008 WL 413268 *4

(same); *Murray v. GMAC Mortgage Corp.*, 2007 WL 1100608 *5 (N.D. Ill. 2007) ("Murray II") (typicality satisfied where, despite minor factual discrepancies, all putative class members had "the same essential characteristics"); *In re Activision Securities Litigation*, 621 F.Supp. 415, 428 (N.D. Cal. 1985) (finding that "the only material variation among class members is the amount of damages to which each member is entitled" and that "[s]uch differences are insufficient to defeat class certification.")

### D.   <u>Adequate Representation</u>

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class."  Representation is adequate if (1) class counsel is qualified and competent and (2) the class representative and his or her counsel are not disqualified by conflicts of interest. *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978).

Here, there are no conflicts of interest between Plaintiff and Class Members. Plaintiff and each Class Member assert identical claims for statutory damages arising from the same facts, *i.e.*, Catalina express's printing of the expiration date of the respective credit or debit card on receipts.  Thus, there is no potential for conflicting interests in this action. *Abels v. JBC Legal Group, P.C.*, 227 F.R.D. 541, 545 (N.D. Cal. 2005) (no conflict where claims asserted by plaintiff and class members arise from defendants' use of form letters allegedly violating the Fair Debt Collection Practices Act).  Moreover, there is no basis for asserting against Plaintiff any unique defenses that Catalina Express could not assert against any other Class Member.  Nor is there any basis to suggest that Plaintiff lacks sufficient zeal or competence.

Nor are their any conflicts with Plaintiff's counsel.  Plaintiff is represented by highly capable and competent counsel experienced in class action litigation, including FACTA lawsuits.  Yedalian Decl. ¶¶ 35-49.  *Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1162 (9th

Cir. 2001) (adequacy established by mere fact that counsel were experienced practitioners).

## E. Rule 23(b)(3) Requirements Are Met

Plaintiff and Catalina Express seek certification pursuant to Rule 23(b)(3), which authorizes certification if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." FRCP 23(b)(3). Rule 23(b)(3)'s predominance and superiority factors are satisfied.

### 1. Predominance of Common Questions

To satisfy predominance, common questions of law or fact must "present a significant aspect of the case" and be capable of resolution "in a single adjudication." *Hanlon*, 150 F.3d at 1022-1023; *Culinary/Bartender Trust Fund*, 244 F.3d at 1163.

The predominance inquiry focuses on whether the class is "sufficiently cohesive to warrant adjudication by representation." *Culinary/Bartender Trust Fund*, 244 F.3d at 1162. Central to this question "is the notion that the adjudication of common issues will help achieve judicial economy." *Zinser v. Accufix Research Institute, Inc.*, 253 F.3d 1188, 1189 (9th Cir. 2001).

In this case, whether Catalina Express violated FACTA "willfully" is the central issue that clearly predominates over any individual issues. Whether Catalina Express did so depends upon facts concerning its own conduct — conduct that applies uniformly to all Class Members in this case.

That common issues predominate is also bolstered by the fact that the available remedy in this case is statutory damages. As the Ninth Circuit explained in *Bateman v. American Multi-Cinema, Inc.*, 623 F.3d 708, 719 (9th Cir. 2010), "irrespective of whether Bateman and all the potential class members can

- 18 -

demonstrate actual harm resulting from a willful violation, they are entitled to statutory damages."

That common issues predominate is also evidenced by the fact that all Class Members' claims involve the very same conduct by Catalina Express—the printing of receipts which contain the credit or debit card's expiration date.

"When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Hanlon*, 150 F.3d at 1022 (internal quotation marks omitted).

## 2. Superiority

To determine whether the superiority requirements of Rule 23(b)(3) are satisfied, a court must compare a class action with alterative methods for adjudicating the parties' claims. Lack of a viable alternative to a class action necessarily means that a class action satisfies the superiority requirement. "[I]f a comparable evaluation of other procedures reveals no other realistic possibilities, [the] superiority portion of Rule 23(b)(3) has been satisfied." *Culinary/Bartender Trust Fund*, 244 F.3d at 1163; *Valentino v. Carter-Wallace*, 97 F.3d 1227, 1235-36 (9th Cir. 1996) ("a class action is a superior method for managing litigation if no realistic alternative exists").

In *Local Joint Executive Board of Culinary/Bartender Trust Fund*, the Ninth Circuit held that a class action met the superiority requirements of Rule 23(b)(3) where class members could recover, at most, damages in the amount of $1,330. Here, unless Class Members can show actual harm, they can recover, at most, statutory damages in an amount between $100 and $1,000 per violation. As in *Culinary/Bartender Trust Fund*, "This case involves multiple claims for relatively small individual sums…. If plaintiffs cannot proceed as a class, some-perhaps most — will be unable to proceed as individuals because of the disparity between their litigation costs and what they hope to recover. 'Class actions ... may permit the

plaintiffs to pool claims which would be uneconomical to litigate individually.'" *Id.* at 1163; see also *Hanlon*, 150 F.3d at 1023 (explaining that "In this sense, the proposed class action is paradigmatic"); *Yokoyama v. Midland Nat'l*, 594 F.3d 1087, 1094 (9th Cir. 2010); ($10,000-$15,000 not sufficient incentive to sue individually); *Chalk v. T-Mobile USA, Inc.*, 560 F.3d 1087, 1095 (9th Cir. 2009) ("policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights"). In *Murray v. GMAC Mortgage Corp.*, 434 F.3d 948, 953 (7th Cir. 2006), a case involving the *identical* remedy provisions of the FCRA[7], the Seventh Circuit held as follows: "Rule 23(b)(3) was designed for situations such as this, in which the potential recovery is too slight to support individual suits, but injury is substantial in the aggregate."

The Supreme Court has similarly held. *Phillips Petroleum Co., v. Shutts*, 472 U.S. 797, 809 (1985) ("this lawsuit involves claims averaging about $100 per plaintiff; most of the plaintiffs would have no realistic day in court if a class action were not available"); *Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 338 n.9 (1980) ("damages claimed by the two named plaintiffs totaled $1,006.00.  Such plaintiffs would be unlikely to obtain legal redress…. This, of course, is a central concept of Rule 23"); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 161 (1974) ("No competent attorney would undertake this complex antitrust action to recover so inconsequential an amount.  Economic reality dictates that petitioner's suit [involving individual damage of $70] proceed as a class action or not at all").

In sum, as the Ninth Circuit explained in another FACTA case, the purpose of Rule 23(b)(3) is "to allow integration of numerous small individual claims into a single powerful unit." *Bateman*, 623 F.3d at 722.

---

[7] "FACTA and other provisions of the FCRA [the Fair Credit Reporting Act] share the same statutory damages provision, see 15 U.S.C. § 1681n." *Bateman, supra*, 623 F.3d at 715.

1       The above authorities clearly dictate that the superiority requirements of Rule
2   23(b)(3) are satisfied here.

3       Consideration of the factors listed in Rule 23(b)(3) bolsters this conclusion.
4   Ordinarily, these factors are (A) the interest of class members in individually
5   controlling the prosecution of separate actions; (B) the extent and nature of any
6   litigation concerning the controversy already commenced by other class members;
7   (C) the desirability or undesirability of concentrating the litigation of the claims in
8   the particular forum; and (D) the difficulties likely to be encountered in the
9   management of a class action.   However, when a court reviews a class action
10  settlement, the fourth factor does not apply.   In deciding whether to certify a
11  settlement class action, a district court "need not inquire whether the case, if tried,
12  would present intractable management problems."   *Amchem Products Inc. v.*
13  *Woodward*, 521 U.S. 591, 620 (1997).   The remaining factors set forth in Rule
14  23(b)(3)(A), (B) and (C) all favor class certification in this case.

15      First, Class Members have no particular interest in individually controlling
16  the prosecution of separate actions.   Statutory damages cannot exceed $1,000, and
17  the fact of the matter is that there is no other known separate action filed or
18  prosecuted by any other class members.   Moreover, any Class Member who desires
19  to pursue actual damages could either seek them through the terms of this
20  Settlement or opt-out of the Settlement.

21      Second, and as explained above, the parties are not aware of any other
22  litigation regarding the FACTA violations at issue in this case.

23      Third, it is desirable to concentrate the litigation in this forum because all of
24  the named parties, including Catalina Express, reside in California and the alleged
25  FACTA violations involve Catalina Express' locations in California and within this
26  district.   Moreover, Plaintiff and Catalina Express have reached a Settlement.   "With
27  the settlement in hand, the desirability of concentrating the litigation in one forum is
28  obvious."   *Elkins v. Equitable Life Ins. of Iowa*, 1998 WL 133747 *19 (M.D. Fla.

1998); *Strube v. American Equity Life Ins. Co.*, 226 F.R.D. 688, 697 (M.D. Fla. 2005) (third and fourth Rule 23(b)(3) factors are "conceptually irrelevant in the context of a settlement").

The conclusion is inescapable that there simply is no better method than a class action for resolving all the claims of the Class Members in this case. The conclusion of the court in *Murray II*, where the court certified a case involving claims for statutory damages under the FCRA, applies equally here:

> "This is a case where class certification presents the most efficient means of adjudicating the controversy. The class is numerous but the potential recovery for each class member is quite small. Indeed, it is exceedingly unlikely that many individuals would wish to go to court for a potential recovery of $100-or that they could find counsel willing to represent them." *Murray II*, 2007 WL 1100608 *7.

Finally, FACTA is a consumer protection statute which serves not just to compensate, but also to "deter" future violations. *Bateman*, 623 F.3d at 718. As the Ninth Circuit has also explained, this "deterrent purpose" of FACTA is served by certification: "we are quite sure that certification of a class here would preserve, if not amplify, the deterrent effect of FACTA." *Id.* at 723.

## IX.   THE TWO-STEP APPROVAL PROCESS

There is a "strong judicial policy that favors settlements," particularly in class actions and other complex cases where substantial resources can be conserved by avoiding the time, cost, and rigors of continued litigation. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992); *In re Pacific Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995).

A settlement of class litigation must be reviewed and approved by the Court. FRCP Rule 23(e). This is done in two steps: (1) an early (preliminary) review by the trial court, and (2) a final review after notice has been distributed to the class members for their comment or objections.

This Court has already performed the first step, having granted preliminary approval of the proposed Settlement on April 4, 2016 (Dkt. No. 31), and this Motion concerns the second step.

At the second step of the approval process (usually referred to as the fairness hearing or final approval hearing), after class members have been notified of the proposed settlement and have had an opportunity to be heard, the court makes a final determination whether the settlement is "fair, reasonable and adequate" under Rule 23(e). *Armstrong v. Board of School Directors of the City of Milwaukee*, 616 F.2d 305, 314 (7th Cir. 1980).

## X.    THE PRESUMPTION OF FAIRNESS

Courts presume the absence of fraud or collusion in the negotiation of a settlement unless evidence to the contrary is offered.   In short, there is a presumption that the negotiations were conducted in good faith. *Newberg*, § 11:51, *In re Chicken Anti-Trust Litigation*, 560 F.Supp 957, 962 (N.D. Ga. 1980); *Priddy v. Edelman*, 883 F.2d 438, 447 (6th Cir. 1989); *Mars Steel Corp. v. Continental Illinois National Bank and Trust Co.*, 834 F.2d 677, 682 (7th Cir. 1987).  Courts do not substitute their judgment for that of the proponents, particularly where, as here, settlement has been reached with the participation of experienced counsel familiar with the litigation.  *Hammon v. Barry*, 752 F.Supp 1087, 1093 (D. D.C. 1990); *Steinberg v. Carey*, 470 F.Supp. 471, 474 (S.D. N.Y. 1979); *Sommers v. Abraham Lincoln Federal Savings & Loan Assoc.*, 79 F.R.D. 571, 573-574 (E.D. Pa. 1978); *In re Pacific Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995).

While the recommendations of counsel proposing the settlement are not conclusive, the Court should take them into account and afford them "great weight," particularly where, as here, they are capable and competent, have experience with this type of matter, and have been intimately involved in this litigation.  *Nat'l Rural Telecomm. Coop. v. DirecTV*, 221 F.R.D. 523, 528 (C.D. Cal. 2004) ("'Great weight' is accorded to the recommendation of counsel, who are

most closely acquainted with the facts of the underlying litigation. [citation.]  This is because '[p]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation.'"); *See also Newberg*, § 11:47.

## XI.    THIS SETTLEMENT IS FAIR AND REASONABLE

The Settlement is well within the range of reasonableness and final approval should be granted.  No single criterion determines whether a class action settlement meets the requirements of Rule 23(e).   In connection with final approval determinations, the Ninth Circuit has directed district courts to consider a variety of factors without providing an "exhaustive list" or suggesting which factors are most important.  *Staton*, *supra*, 327 F.3d at 959.  "The relative degree of importance to be attached to any particular factor will depend upon and be dictated by the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each individual case."  *Officers for Justice v. Civil Service Commission of City and County of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982).  Indeed, "one factor alone may prove determinative in finding sufficient grounds for court approval."  *Nat'l Rural Telecomm. Coop. v. DirecTV*, 221 F.R.D. 523, 525 (C.D. Cal. 2004); *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993), *cert. denied*, 512 U.S. 1220 (1994).

Due to the impossibility of predicting any litigation result with certainty, a district court's evaluation of a settlement essentially amounts to "nothing more than 'an amalgam of delicate balancing, gross approximations and rough justice.'"  *Officers for Justice,* 688 F.2d at 625.  The ultimate touchstone, however, is whether "class counsel adequately pursued the interests of the class as a whole." *Staton*,  327 F.3d at 961.  As the Ninth Circuit explained in *Officers for Justice*, the district court's role in evaluating a class action settlement is therefore tailored to meet that narrow objective.  Review under Rule 23(e) "must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or

overreaching by, or collusion between, the negotiating parties." *Officers for Justice,* 688 F.2d at 625. Accordingly, the Ninth Circuit will not reverse a district court's approval of a class action settlement unless the settlement provisions clearly suggest the possibility that class interests gave way to self interest. *Staton*, 327 F.3d at 961. Some of the factors which were considered in evaluating the reasonableness of this Settlement are as follows:

### A.    Risks of Continuing Litigation

Absent this Settlement, there are very real risks involved in continued litigation, including extensive delays, potential appeals and the possibility that Settlement Class Members may ultimately end up with no recovery. Yedalian Decl. ¶ 13.

### 1.    "Willfulness"

In order to recover any statutory damages and other remedies under 15 U.S.C. § 1681n, Plaintiff must show that Catalina Express engaged in "willful" conduct. However, Catalina Express has vigorously denied that its conduct was willful. Yedalian Decl. ¶ 15. In contrast, Plaintiff believes, among other things, that the printing of the expiration date was reckless and obvious to Catalina Express and the result of a lack of adequate measures to safeguard consumer rights. Yedalian Decl. ¶ 15.

Regardless of how strongly the Parties feel about the merits, the Parties face issues and risks concerning how the legal requirements for a "willful" violation of FACTA will be applied to the particular facts of this case. Yedalian Decl. ¶ 16.

### 2.    Class Certification

The Parties have sharply divergent positions on class certification in this case, absent a settlement. Catalina Express has denied that for any purpose other than that of settling this lawsuit, this action is appropriate for class treatment. Settlement Agreement XI.A.; Yedalian Decl. ¶ 17.

Plaintiff believes that the Ninth Circuit's decision in *Bateman v. American Multi-Cinema, Inc.*, 623 F.3d 708 (9th Cir. 2010), which reversed the denial of class certification in another FACTA case, strongly supports certification in this case. Yedalian Decl. ¶ 18.

Yet, absent a settlement, class certification remains a hotly contested matter in this case, and there are risks attendant in continued litigation of these issues, including, at a minimum, delays and potential appeals. Yedalian Decl. ¶ 19.

For example, after the Ninth Circuit's decision in *Bateman*, one district court within the Central District denied class certification in a FACTA case, *Martin v. Pacific Parking Systems, Inc.*, 2012 WL 2552694 (C.D. Cal. July 2, 2012). On September 6, 2012, the Ninth Circuit granted a Rule 23(f) petition for permission for discretionary leave to appeal the district court's denial of certification in *Martin* (9th Cir. Docket No. 12-80144), and on appeal it was held that the district court did not abuse its discretion based upon the facts in that case. 2014 WL 3686135 (July 25, 2014). Yedalian Decl. ¶ 20.

In sum, while Plaintiff feels strongly about certification in this case, *Martin* is an example of a FACTA case demonstrating the risks inherent in certification, including, at a minimum, delays and potential appeals. Yedalian Decl. ¶ 21.

### 3. Choice of Law, Notice of Claim and Time Bar Provisions

As discussed above, Catalina Express filed a motion to dismiss on the grounds that, *inter alia*, there is a choice-of-law clause in Plaintiff's passenger ticket that expressly states that "the general maritime law of the United States" applies, and that regardless of the choice-of-law applied, Plaintiff's claims are time-barred by a contractual provision found in the passenger ticket which requires a notice of claim within 6 months and the filing of suit within 1 year and that such time-bar provisions are valid, fair and were reasonably communicated to Plaintiff. Dkt. No. 10. While Plaintiff disputes the effect of such provisions, if Catalina Express were

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 2:15-cv-03289-AB-MRW

1  to prevail on these issues they could be dispositive and afford Catalina Express a
2  complete defense.  Yedalian Decl. ¶ 22.

3      **B.**    <u>**Substantial Benefits of Settlement Compared to Risks of Continued**</u>
4  <u>**Litigation**</u>

5          The Settlement provides for substantial benefits.  Yedalian Decl. ¶ 23.

6          The Settlement establishes a non-reversionary Settlement Fund in the amount
7  of $275,000.  Settlement Agreement I(38).

8          Further, that each Class Member may make a Claim for each and every
9  unique credit or debit card for which they can provide required documentation (and
10 in an amount of up to $250 without showing actual harm) is considerable in that it is
11 2.5 times the minimum statutory damages ($100) available for a willful violation of
12 FACTA.   Although compared to the maximum possible recovery of $1,000 in
13 statutory damages, $250.00 is a 25% value (which is not insubstantial), the propriety
14 of awarding *full* statutory damages to Settlement Class Members who do not claim
15 actual monetary loss is strongly disputed.  Many FACTA defendants have argued
16 that lack of "actual harm" precludes, if not any award of statutory damages to begin
17 with, at the very least "excessive" statutory damages.  Since it remains to be seen
18 how courts will resolve such constitutional challenges to statutory damage awards
19 under FACTA, the value negotiated by the Parties represents a fair compromise well
20 within the range of reasonableness.  Yedalian Decl. ¶ 25.  Moreover, for those Class
21 Members who can submit more than one Claim (for example a Class Member who
22 used 5 unique cards during the Class Period) such Class Member's recovery ($250 x
23 5) may exceed $1,000.

24         "The proposed settlement is not to be judged against a hypothetical or
25 speculative measure of what *might* have been achieved by the negotiators." *Officers*
26 *for Justice*, *supra*, 688 F.2d at 625.  Moreover, as long as the Settlement is
27 reasonable, it does not matter that under the best case scenario, the potential value of
28 the case may be much higher. *In re Cendant Corp., Derivative Action Litigation*,

232 F.Supp.2d 327, 336 (D. N.J. 2002) (approving settlement which provided less than 2% value compared to maximum possible recovery); *In re Heritage Bond Litigation*, 2005 WL 1594403 *27-28 (C.D. Cal. 2005) (median amounts recovered in settlement of shareholder class actions were between 2% - 3% of possible damages).

The cash benefits are also reasonable when compared to the value of similar benefits in other FACTA cases.  For example, in *In re Toys "R" Us–Delaware, Inc.—Fair And Accurate Credit Transactions Act (FACTA) Litigation*, No. cv–08–01980 MMM (FMOx), 295 F.R.D. 438, 447 (C.D. Cal. January 17, 2014), the Court found that the benefit of vouchers having a maximum combined value of $30.00 was reasonable in a case alleging nationwide FACTA violations against a much larger corporate defendant.

Another benefit is the fact that in response to this litigation, Catalina Express modified its credit and debit card printed-paper receipt format to obscure the card expiration date and adopted a policy of continued future compliance with FACTA's 15 U.S.C. Section 1681c(g)(1).  Sawasaki Decl. ¶ 7; Settlement Agreement at III.G. This FACTA compliance policy ensures that Catalina Express will not continue to violate the law, willfully, inadvertently or otherwise.  Yedalian Decl. ¶ 26.

Such non-pecuniary benefits are properly considered in judging the results of the lawsuit.  *See*, *e.g.*, *Craft v. County of San Bernardino*, 624 F.Supp.2d 1113, 1121, (C.D. Cal. 2008) (taking into account fact that, in addition to monetary aspects, the defendant stopped the practices at issue).  This is especially true with a consumer protection statute such as FACTA which, as the Ninth Circuit has held, serves both a compensatory and "deterrent purpose." *Bateman*, 623 F.3d at 718.  "In fashioning FACTA, Congress aimed to 'restrict the amount of information available to identity thieves.'"  *Ibid.*  The non-pecuniary benefits achieve that substantial purpose.

The importance of such non-pecuniary benefits was also recently explained by the Ninth Circuit in a case involving another consumer protection statute, the Fair Debt Collection Practices Act:

"The FDCPA is a consumer protection statute and was intended to permit, even encourage, attorneys like Lemberg to act as private attorney generals to pursue FDCPA claims. Moreover, plaintiffs have already benefitted and will continue to benefit from this case.  Mickell admits that he has ceased his practice of sending letters to debtor's workplaces, a benefit to all class members.  Furthermore, certifying the class will serve a 'deterrent' component to other debt collectors who are engaging, or consider engaging in this type of debt collection tactic." *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1031 (9th Cir. 2012).

## C.   Agreement Provides That Change Of Law Before Final Approval of Settlement Will Not Compromise Settlement Class Members' Benefits

A further benefit of the Settlement assures that if there is an intervening change of law before final approval of the Settlement, the Settlement and Settlement benefits will continue to remain valid, enforceable and available to Settlement Class Members.  Settlement Agreement III.H.

The significance of this benefit cannot be understated.  For example, as explained by the Ninth Circuit in *Bateman*, in 2008 (while many FACTA lawsuits were then pending) Congress enacted the Credit and Debit Card Receipt Clarification Act ("Clarification Act").  The Clarification Act retroactively granted a *temporary* immunity from statutory damages for FACTA violations to those defendants that printed an *expiration date* "between December 4, 2004, and June 3, 2008 [the date the Clarification Act was enacted]." *Bateman*, *supra*, 623 F.3d at 717.  As a result of the change of law imposed by the Clarification Act, many

FACTA class action cases were dismissed without any recovery for consumers. Yedalian Decl. ¶ 29.

**D.    The Settlement Is The Product of Extensive Arm's-Length Negotiations**

As discussed above, the Settlement Agreement is the product of extensive, adversarial, arm's-length discussions, negotiations, correspondence, factual and legal investigation and research, and careful evaluation of the respective parties' strengths and weaknesses.  Yedalian Decl. ¶¶  30-34.

**E.    The Findings Made In This Court's Orders Granting Preliminary Approval Likewise Support The Grant of Final Approval**

The findings made in this Court's Orders granting preliminary approval of settlement (Dkt. No. 31), are likewise adequate considerations that support the grant of final approval of the settlement.

**F.    The Lack Of Any Opt-Outs, Objections And Requests To Appear Also Supports The Grant of Final Approval**

The lack of any opt-outs, objections and requests to appear also provides further support for the Settlement.  "It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *In re Omnivision Techs., Inc.*, 559 F.Supp.2d 1036, 1043 (N.D. Cal. 2008) (quoting *Nat'l Rural Telecomms. Coop. v. DirecTV*, 221 F.R.D. 523, 529 (C.D. Cal. 2004)).  "The absence of a single objection to the Proposed Settlement provides further support for final approval of the Proposed Settlement." *Nat'l Rural Telecomm. Coop.*, 221 F.R.D. at 529.

The lack of any objection from or intervention by the CAFA Coordinators of any government entity likewise provides further support for the settlement.

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 2:15-cv-03289-AB-MRW

## XII.   CONCLUSION

The proposed class action Settlement is fair, adequate and reasonable.  It is non-collusive, and it was achieved as the result of informed, extensive, and arm's-length negotiations conducted by experienced counsel.

It is respectfully requested that the Court grant final approval of the settlement and enter an order and judgment in the form proposed and submitted herewith.

Plaintiff also respectfully requests that the Court grant Plaintiff's Motion For Award Of Attorney's Fees And Costs To Class Counsel And Incentive Payment To The Class Representative (set for hearing concurrently with this instant Motion).

Respectfully submitted,

DATED:  June 30, 2016            CHANT & COMPANY
                                 A Professional Law Corporation


                                 By:  /S/ – Chant Yedalian
                                      Chant Yedalian
                                      Counsel For Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Court using the CM/ECF system which will send notification of such filing to the electronic service list for this case.

Dated:  June 30, 2016            CHANT & COMPANY
                                 A Professional Law Corporation


                                 By:  /S/  Chant Yedalian
                                      Chant Yedalian

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 2:15-cv-03289-AB-MRW